SECOND DIVISION

February 13, 2001

No. 1-00-0328 

ELDON J. HINSHAW and KATH
RYN T. ) Appeal from the

KERBER, as co-executors of the   ) Circuit Court of 

estate of Mary E. Wade, deceased; ) Cook County.  

ELDON J. HINSHAW, individually; )  

and JESSIE M. HINSHAW, )

             ) 

Plaintiffs-Appellees, ) 

)

v. ) 

)

COACHMEN INDUSTRIES, INC., 
) 

COACHMEN VAN CONVERSIONS,          ) The Honorable

a subsidiary of COACHMEN ) Michael J. Hogan,

INDUSTRIES, INC., COACHMEN ) Judge Presiding.

AUTOMOTIVE (formerly COACHMEN )

VANS), FLEXSTEEL INDUSTRIES, INC., )

FLEXSTEEL DIVISION, DYGERT )

SEATING, CHRYSLER CORPORATION, )

CHRYSLER MOTORS CORPORATION, )

DAIMLER-CHRYSLER AG, DAIMLER- )

CHRYSLER MOTORS CORPORATION, )

a Delaware corporation, MITCHELL )

A. PATE, SECOR SALOON, TOM RORA, )

BARBARA RORA, and GARY JASPER, )

)

Defendants-Appellants. )

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs-appellees Eldon and Jessie Hinshaw, individually, and Eldon Hinshaw and Kathryn Kerber, as co-executors of the estate of Mary Wade, deceased, filed a complaint in the circuit court of Cook County alleging negligence, products liability, breach of warranty, and Dramshop Act violations arising from an auto accident in which Eldon and Jessie Hinshaw were seriously injured, and in which Mary Wade, the backseat occupant of the Hinshaw van, was killed.  Defendants named in the complaint included Mitchell Pate, the driver of the vehicle which collided head-on with the Hinshaw van; Dramshop Act defendants Tom and Barbara Rora, Gary Jasper, and the Secor Saloon; Daimler-Chrysler Corporation, the manufacturer of the Hinshaw van; Coachmen Industries, Inc., the customizer of the van; and Flexsteel Industries and Dygert Seating, which manufactured the van's seats.  Defendants  Coachmen Industries, Inc., and Coachmen Automotive (hereinafter referred to collectively as Coachmen) moved to transfer this action to Woodford County, the site of the accident, under the doctrine of 
forum non conveniens
.  The circuit court denied the motion, and Coachmen appealed pursuant to Supreme Court Rule 306(a)(2) (166 Ill. 2d R. 306(a)(2)).  For the reasons set forth below, we affirm the denial of the motion.  

BACKGROUND

Plaintiffs-appellees alleged in their complaint
(footnote: 1) that on December 28, 1996, Eldon Hinshaw, Jessie Hinshaw and Mary Wade were in a Dodge van which was traveling eastbound on Route 24 in Woodford County, Illinois.  At about 4:20 p.m., Mitchell Pate was driving westbound on the same road when he attempted to pass another vehicle and struck the Hinshaw van head-on in the eastbound lane.  Eldon and Jessie Hinshaw were seriously injured in the collision, and Mary Wade was killed.  According to the complaint, Pate was intoxicated at the time of the collision and had been drinking at the Secor Saloon, an establishment located in Secor Illinois, which is in Woodford County.  Defendants Tom and Barbara Rora were the owners of the Secor Saloon, and defendant Gary Jasper owned the building in which the saloon was located.  It is undisputed that these four Dramshop Act defendants did not join in Coachmen's motion to transfer venue.  

In their answers to defendant Daimler-Chrysler's interrogatories, plaintiffs identified seven persons who were present at the scene of the accident, at or near the time of the collision.  Four of those seven were directly involved in the accident: Eldon and Jessie Hinshaw of Bloomington, Illinois, in McLean County; Mitchell Pate of Sheridan, Illinois, in LaSalle County; and Quinn Schad, Pate's passenger, of East Peoria, Illinois, in Tazewell, County.  Two of the remaining three occurrence witnesses reside in DuPage County, and one lives in Cook County.  Kathryn Kerber, the remaining plaintiff, resides in McLean County, and Mary Wade, the deceased, also lived in McLean County.  Plaintiffs identified 18 other persons with knowledge of the facts of the occurrence.  Fifteen of them reside in Illinois: seven in Will County, three in McLean County, two in DuPage County, two in Lake County and one in Woodford County.  Plaintiffs also identified an auto pound in Cook County where the Hinshaw van was stored after the accident.  

In its response to plaintiffs' interrogatories, Daimler-Chrysler identified 48 vehicle dealerships in Cook County which sell Daimler-Chrysler vehicles.  According to Daimler-Chrysler, there is one such dealership in Woodford County.  Daimler-Chrysler also named two of its employees as persons with knowledge of potentially relevant matters.  Both of them presumably reside in Michigan.  Defendant Coachmen identified in its answers to plaintiffs' interrogatories three dealerships in Woodford County which sell Coachmen products: one in Eureka, one in Morton, and a third in Peoria.
(footnote: 2)  According to a purchase order attached to Coachmen's answers to interrogatories, the Hinshaw van at issue in this case was purchased in Morton, Illinois.  Coachmen also named at least seven dealerships in Cook County which sell its products.  In addition, Coachmen listed seven of its employees, all of whom presumably live in Indiana, as persons with potentially relevant knowledge. 

Coachmen also filed a reply in support of its motion to transfer venue.  Exhibits attached to this reply included an Illinois Traffic Crash Report indicating that the on-scene investigation of the accident was conducted by Woodford County police, assisted by officers from Eureka and El Paso, both of which are in Woodford County.  Also attached to Coachmen's reply were medical-bill summaries for plaintiffs Eldon and Jessie Hinshaw indicating that their medical care providers were located primarily in McLean and Peoria counties.  Thirteen were in McLean County, five in Peoria County, and one each in Woodford and Champaign counties.  Also attached was an "Annual Report of the Illinois Courts" for the year 1997, upon which Coachmen relies for its assertion that the Cook County court system is more congested than Woodford County's. 

In November 1999, defendant Mitchell Pate was dismissed from the complaint pursuant to a good-faith settlement with plaintiffs.  In January 2000, plaintiffs moved to voluntarily dismiss their claims against defendant Flexsteel.  In the same month, a hearing was held on Coachmen's motion to transfer venue, with Daimler-Chrysler orally joining in the motion.  The trial court denied Coachmen's motion, 
stating that there were "at least nine different counties or states that have potential witnesses and have some relations to this case," that the witnesses were "spread all over," and that Coachmen had not met its burden of showing that a transfer to Woodford County was strongly favored.  The instant appeal followed.  

DISCUSSION

The sole issue in this appeal is whether the trial court abused its discretion in denying Coachmen's motion to transfer this action to the circuit court of Woodford County pursuant to the doctrine of intrastate 
forum non conveniens
.  Coachmen contends that the balance of public and private factors strongly favors that transfer, and the trial court therefore erred in denying Coachmen's motion.  Plaintiffs argue that Coachmen failed to meet its burden of showing that the relevant factors strongly favor transfer.  

"[A] trial court is vested with broad discretion in ruling on a 
forum non conveniens
 motion; its decision will be reversed only if it is shown that the court abused its discretion in weighing the relevant considerations."  
Griffith v. Mitsubishi Aircraft International, Inc.
, 136 Ill. 2d 101, 106, 554 N.E.2d 209, 211 (1990).  

In resolving a 
forum non conveniens
 motion, a court balances private interest factors affecting the litigants and public interest factors affecting the administration of the courts.  
Griffith
, 136 Ill. 2d at 105, 554 N.E.2d at 211; 
Washington v. Illinois Power Co.
, 144 Ill. 2d 395, 399, 581 N.E.2d 644, 645 (1991); 
Schoon v. Hill
, 207 Ill. App. 3d 601, 605, 566 N.E.2d 718, 721 (1990).  Important private interest considerations include the relative ease of access to sources of proof; the availability of compulsory process for the attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the possibility of a view of the premises if such a view is appropriate to the action; and "'all other practical problems that make trial of a case easy, expeditious and inexpensive.'"  
Washington
, 144 Ill. 2d at 399, 581 N.E.2d at 645
; 
Smith v. Silver Cross Hospital
, 312 Ill. App. 3d 210, 216-17, 726 N.E.2d 697, 702-03 (2000).  Public factors to be considered include the administrative difficulties which result when litigation is handled in congested venues, the unfairness of imposing jury duty on a community with no connection to the litigation, and an interest in having localized controversies decided locally.  
Griffith
, 136 Ill. 2d at 106, 554 N.E.2d at 211; 
Schoon
, 207 Ill. App. 3d at 605, 566 N.E.2d at 721.  

A further consideration under the 
forum non conveniens
 doctrine is deference to plaintiff's choice of forum.  
Griffith
, 136 Ill. 2d at 106, 554 N.E.2d at 211.  
While a plaintiff's choice is normally given great weight, it is entitled to less deference when the plaintiff selects a foreign forum. 
Schoon
, 207 Ill. App. 3d at 605, 566 N.E.2d at 721.  Nevertheless, in either case, a plaintiff's choice of forum should rarely be disturbed unless the relevant factors, viewed in their totality, strongly favor transfer.  
Griffith
, 136 Ill. 2d at 106-08, 554 N.E.2d at 211-12 (rejecting argument that, where plaintiff is foreign to the chosen forum, defendant need establish only that factors 
favor
, rather than 
strongly
 favor, transfer; plaintiff's choice of forum receives less deference where plaintiff is not resident of the forum, but that does not alter the ultimate test, which is whether the relevant factors, having been given their appropriate weight or deference, and viewed in their totality, strongly favor transfer);
 
see also 
Elling v. State Farm Mutual Automobile Insurance Co.
, 291 Ill. App. 3d 311, 318, 683 N.E.2d 929, 934 (1997) ("[W]hile the deference to be accorded to a plaintiff regarding his choice of forum is less when the plaintiff chooses a forum other than where he resides or where the injury occurred, nonetheless the deference to be accorded is only 
less
, as opposed to 
none
, and the test is still whether the relevant factors[,] viewed in their totality, strongly favor transfer to another forum").  Hence, the defendant has the burden of "establishing that the relevant factors, to which the court applies the balancing test, viewed in their totality, strongly favor the alternative forum." 
Smith
, 312 Ill. App. 3d at 217, 726 N.E.2d at 703.    

Coachmen argues that the trial court applied the wrong standard in denying the motion to transfer.  According to Coachmen, the court failed to balance the relevant factors as required, and instead held Coachmen to the standard that in order for the motion to succeed, all of the public and private interest factors must strongly favor transfer.  Referring to the transcript of the hearing on its motion, Coachmen pointed to an exchange where plaintiffs' counsel, Thomas Harris, stated what he felt was the appropriate standard: "Defendant Coachmen has to show that all of the public and private interest factors[] strongly favor[] the transfer to Woodford County."  The court responded: "I think that's the standard."  Coachmen thus argues that the trial court mistakenly assumed that 
all
 of the factors must strongly favor transfer.  By contrast, the correct standard, according to Coachmen, is expressed in this court's statement in 
Evans v. MD Con, Inc.
, 275 Ill. App. 3d 292, 298, 655 N.E.2d 1016, 1021 (1995), that the defendant need only show that its suggested county "would be a substantially more appropriate forum, in light of the private and public interest factors."   

Coachmen raised this point for the first time at oral argument.  Supreme Court Rule 341(e)(7) (179 Ill. 2d R. 341(e)(7)) provides that points not asserted in an appellant's brief are waived and shall not be raised for the first time in oral argument.  See 
People v. Thomas
, 164 Ill. 2d 410, 422, 647 N.E.2d 983, 990 (1995).  

Even if this argument were not waived, we are not convinced that the standard as stated in the exchange between Harris and the trial court, when viewed in its entire context, was incorrect.  In 
Griffith
, our supreme court described the balancing test used in deciding a 
forum non conveniens
 motion as "an uneven one that requires a showing that the relevant factors strongly favor transfer before transfer is allowed."  136 Ill. 2d at 107, 554 N.E.2d at 212.  Similarly, this court in 
Evans
 described the balancing test as "an unequal one, weighted in favor of the plaintiff's chosen forum."  
Evans
, 275 Ill. App. 3d at 295, 655 N.E.2d at 1019.  The court in 
Griffith
 further described the standard as being "whether the relevant factors, viewed in their totality, strongly favor transfer to the forum suggested by defendant."  
Griffith
, 136 Ill. 2d at 108, 554 N.E.2d at 212.  There is no reason to think that the trial court in the instant case disagreed with this standard, particularly in view of what followed in the transcript after the passage mentioned by Coachmen.  Immediately following the trial court's assent to Harris's description of the standard, Harris added: "It's not an even balance thing.  I don't believe there has been any attempt to show factors strongly in favor of the transfer."  
  Viewed in this context, the trial court's reference to "all of the *** factors" and its assertion that the test is "not an even balance" mean essentially the same thing as was stated in 
Griffith
 and 
Evans
, namely, that the factors, when viewed 
in their totality
, must strongly favor transfer.  Neither 
Griffith
 nor 
Evans
 negates that the balancing test is unequal, 
i.e.
, weighted in favor of a plaintiff's choice of forum.  Indeed, the assertion in 
Evans
 that the defendant's recommended forum must be "
substantially
 more appropriate" (emphasis added) than the chosen forum is merely another way of saying that the balancing test is "unequal" and the factors must 
strongly
 favor transfer.  There is nothing in the colloquy between the trial court and Harris that departs from this position.  In addition, the term "unequal balance" describes a process of weighing where not all of the factors are on one side.  If they were,
 there would be no need for a balancing.  Accordingly, we cannot conclude that the trial court abused its discretion by applying an incorrect standard. 

Before addressing the private interest factors, we note that, as indicated, plaintiffs' claims against Pate, the driver of the vehicle which collided with the Hinshaw van, were dismissed pursuant to a settlement.  As a result, it is undisputed that the case as it stands now is limited to product liability, breach of contract, and Dramshop Act issues.  

With respect to the private interest factors, Coachmen argues that they strongly favor Woodford County.  In support of this contention, Coachmen asserts that plaintiffs reside in "counties contiguous to Woodford County," that the four Dramshop Act defendants are in Woodford County, that the accident occurred in Woodford County and was investigated by officers who were employed there, that plaintiffs received their medical care from hospitals and physicians located in or near Woodford County, and that the Hinshaw van, whose design and manufacture is now the primary issue in this case, was purchased by plaintiffs in Woodford County. 

Taking the last item first, we note that, according to the purchase order attached to Coachmen's answers to plaintiffs' interrogatories, the Hinshaw van was purchased from a dealership in Morton, Illinois.  As set forth in footnote 2 above, we take judicial notice that Morton, Illinois, is in Tazewell (not Woodford) County.  In addition, while the Secor Saloon is in Woodford County, there is nothing in the record to indicate that either Tom and Barbara Rora, the owners of the tavern, or Gary Jasper, the owner of the building where it is located, resides in Woodford County.  Even if they did live in Woodford County, these defendants did not join in Coachmen's motion to transfer venue.  As to the accident's occurring in Woodford County, the claims against defendant Pate, as noted, have been dismissed, and the case at this point is focused on product liability, breach of contract, and Dramshop Act claims, not on the negligence claims against Pate.  Hence any importance of the accident scene to the case as it now stands is diminished.  As to the remaining factors which might favor Woodford County, it is questionable whether these factors 
strongly
 favor Woodford County, given that, as the trial court observed, potential witnesses and relations to the case are "spread all over."  

The accuracy of the court's observation can be seen by looking at where the witnesses and relations are located.  Plaintiffs, for example, resided in McLean County, which is also where the majority of Eldon and Jessie Hinshaw's medical providers were located.  In addition, three of 15 Illinois residents identified by plaintiffs as having knowledge of the facts of the occurrence (knowledge witnesses) live in McLean County, while one lives in Woodford County.  Seven of these 15 knowledge witnesses live in Will County, and two others reside in Lake County.  The remaining two live in DuPage County, which is also the residence of two persons who witnessed the accident.  A third person who witnessed the accident resides in Cook County, which is also the location of an auto pound where the Hinshaw van was stored after the accident.  As noted, the dealership where the Hinshaw van was purchased is in Tazewell County, which is also where Quinn Schad, Pate's passenger, resides.  Pate's residence is in LaSalle County.  Outside Illinois, two Daimler-Chrysler employees with knowledge of potentially relevant matters reside presumably in Michigan, and seven Coachmen employees with potentially relevant knowledge presumably live in Elkhart, Indiana. 

Given that these potential witnesses and other connections are scattered in eight Illinois counties and two additional states, it was not unreasonable for the trial court to conclude that there was no predominance among the counties such that Woodford County was strongly favored.  See 
Meyers v. Bridgeport Machines Division of Textron, Inc.
, 113 Ill. 2d 112, 121, 497 N.E.2d 745, 749 (1986) (affirming denial of 
forum non conveniens
 motion, where factual connections with forum were evenly distributed among four counties, and there was thus no predominance of connections to any one county). 
 
While some of the sources of proof, particularly witnesses, are located in Woodford County and counties adjacent to it, the same can be said for Cook County.  In addition, it is arguably easier for potential product liability witnesses such as the Daimler-Chrysler employees in Michigan and the Coachmen employees in Indiana to travel to Cook County than it would be for them to travel to Woodford County.  Hence, if considerations as to the ease of access to sources of proof favor one county over the other, which is doubtful, they would seem to favor Cook County.  In addition, there is nothing in the record to indicate that compulsory process for the attendance of unwilling witnesses is any more or less available in Woodford County than it is in Cook County.  Nor is there any clear indication that the cost of obtaining attendance of willing witnesses would necessarily differ greatly between Cook and Woodford counties.  As to the possibility of a view of the premises, since the case is now focused primarily on product liability claims, the importance of this factor appears to be diminished.  Thus it was not an abuse of discretion to conclude that the private interest factors do not strongly favor transfer to Woodford County.
     

One of the public interest factors to be considered is the interest in having localized controversies decided locally.  While the instant case might have been such a localized controversy at one time, now that Pate has been dismissed, it is, as noted, primarily a products liability case.  As such, any local interest on the part of, say, Woodford County is largely supplanted by a more general interest in the safety of Dodge vans.  Relevant to this concern is the fact that, as noted, there are 48 dealerships in Cook County which sell Daimler-Chrysler vehicles, and at least seven which sell Coachmen products.  Woodford County, on the other hand, has just one of each.  Given that difference, we cannot say that Woodford County would have a stronger interest than Cook County in the products liability aspects of this case.  Another public interest consideration is that jury duty should not be imposed upon the residents of a community with no relation to the litigation.  However, as has been shown, Cook County is not such a community.  Finally, we look to the status of the court docket where the action was filed.  It is undisputed that Cook County's court docket is busier than Woodford County's.  However, "[w]ith respect to the forum docket backlog issue, courts are extremely reluctant to remove cases because of crowded dockets."  
Smith
, 312 Ill. App. 3d at 218, 726 N.E.2d at 704 (citing 
Brummet v. Wepfer Marine, Inc.
, 111 Ill. 2d 495, 503, 490 N.E.2d 694 (1986)); see also 
Griffith
, 136 Ill. 2d at 114, 554 N.E.2d at 215 (court congestion factor alone is not enough to justify transfer of a case when balanced against other relevant factors).    

Accordingly, it was not an abuse of discretion to conclude that the public interest factors do not strongly favor a transfer to Woodford County. 

Notwithstanding the foregoing, Coachmen relies upon 
Washington v. Illinois Power Co.
, 144 Ill. 2d 395, 581 N.E.2d 644 (1991), where the court held that it was an abuse of discretion to deny the defendant's motion to transfer the case from Madison County to Bond County.  
Washington
 is distinguishable from the instant case.  In 
Washington
, the plaintiffs, who were residents of Bond County, sued the defendant power company in the circuit court in Madison County for damages resulting from the death of their son, who was electrocuted when he touched one of the defendant's allegedly uninsulated power lines while he was climbing a tree in front of his home.  The boy's mother witnessed his death, and as a result she allegedly suffered emotional and psychological injuries which required hospitalization and medical treatment.  Though her treating physicians were located closer to Madison County than to Bond County, the court in 
Washington
 looked at other factors and held that the trial court abused its discretion in denying the defendant's 
forum non conveniens
 motion for transfer.  The plaintiffs, for example, were residents of Bond County.  All of the witnesses referred to in the case were from Bond County.  In addition, all of the sources of proof were located in Bond County.  By contrast, in the instant case, plaintiffs were residents of McLean County, not Woodford County.  Further, unlike in 
Washington
, here only a minority of witnesses were in Woodford County, with the remainder "spread all over," including Cook County.  We note further that in 
Washington
 there may have been no county other than Bond with a strong interest in the case, given that the allegedly uninsulated power line at issue was situated in Bond County.  Here, by contrast, the safety of Dodge vans is of interest to Cook County as well as Woodford County.  A further distinction between the two cases is that, since
 in 
Washington
 the defendant power company 
had not been dismissed from the case, the fact that the boy's death occurred in Bond County was potentially important, especially if it were determined that a view of the scene would be appropriate.  Here, Pate, the driver of the vehicle which struck the Hinshaw van, has been dismissed pursuant to a settlement, rendering less important the fact that the accident occurred in Woodford County.  

In the instant case, we cannot say that the trial court abused its discretion in denying Coachmen's motion to transfer venue.  The court concluded that Coachmen had not met its burden of showing that the relevant factors, viewed in their totality, strongly favored a transfer to Woodford County, and we cannot say that this conclusion was unreasonable.  While we might have come to a different conclusion, we emphasize that our role here "is not to substitute our judgment for that of the trial court, or to decide whether we would have weighed the factors differently [citation], or even to determine whether the trial court 'exercised [its] discretion wisely.'" 
Griffith
, 136 Ill. 2d at 115, 554 N.E.2d at 215.  "Rather, our task is to determine whether the trial court abused its discretion" (
Griffith
, 136 Ill. 2d at 115, 554 N.E.2d at 215), and we conclude that it did not.  

Accordingly, we affirm the trial court's denial of Coachmen's 
forum non conveniens
 motion to transfer venue to Woodford County.  

Affirmed.   

CAHILL, P.J. and COUSINS, J., concur.

FOOTNOTES
1:
Counts I-XXII of the complaint were filed in December 1998, and counts XXIII-XXVIII were added in July 1999. 

2:
We note that according to the 
Illinois Atlas & Gazetteer
 41 (DeLorme 3d ed. 2000), only one of these communities, Eureka, is in Woodford County.  Morton is in Tazewell County, and Peoria is in Peoria County.  Although these factors are not dispositive, we are permitted to take judicial notice of them as revealed in "recent maps."  See 
Sublette Exchange Bank v. Fitzgerald
, 168 Ill. App. 240 (1912) (taking judicial notice that, "according to recent maps," there was no railroad connection to Plainview, Texas, which was "a long distance from Fort Worth"); see also 18 I.L.P. Evidence §4, at 140 (1956) ("Courts may judicially notice geographical facts" including the boundaries of Illinois counties); see generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence §202.1, at 56 (6
th
 ed. 1994) ("Although not generally known, matters may be so capable of verification as to be beyond reasonable controversy and hence proper subjects of judicial notice").