FIFTH DIVISION

                                      June 30, 2003 

1-01-4346

SEARS, ROEBUCK AND COMPANY, a New York ) Appeal from the

corporation, and ALFREDO E. JIJON, ) Circuit Court of 

) Cook County.

)

Third-Party Plaintiffs-Appellants, ) 

) 

v. )

)

ACCEPTANCE INSURANCE COMPANY, TRAVELERS )

CASUALTY AND SURETY COMPANY, f/k/a )

Aetna Casualty and Surety Company, and )

ROSA L. KRESIN, )

)

Third-Party Defendants-Appellees )

)

)

(Charwil Associates L.P., )

) 

Defendant; )

)

Acceptance Insurance Company: )

)

Counterplaintiff; )

)

) 

Charwil Associates L.P., Acceptance )

Insurance Company, Travelers Casualty   )

and Surety Company, f/k/a Aetna )

Casualty and Surety Company, and ) Honorable

Rosa L. Kresin, ) Thomas Durkin and 

) Patrick McGann,

Counterdefendants). ) Judges Presiding.

JUSTICE QUINN delivered the opinion of the court:

Third-party plaintiffs Sears, Roebuck and Company (Sears) and Alfredo Jijon (collectively plaintiffs) appeal the trial court's grant of summary judgment (735 ILCS 5/2-1005 (West 2000)) in favor of third-party defendants Acceptance Insurance Company (Acceptance) and Travelers Casualty and Surety Company (Travelers).  This ruling had the effect of denying Sears and Jijon indemnification for a nearly $15.7 million judgment they  had entered against them stemming from a June 1, 1996, accident where Rosa Kresin was injured when she was struck by a van driven by Jijon while it was being backed out of a Sears Automotive Center at Charlestowne Mall in St. Charles, Illinois.
(footnote: 1)  On appeal, plaintiffs contend that the trial court erred in granting summary judgment because it failed to consider the "parking exception" contained in the policy.  For the reasons set forth, we affirm the judgment of the trial court.

BACKGROUND

In January 2000, while the 
Kresin
 case was on appeal, plaintiffs filed their fourth amended third-party complaint containing five counts.  Counts I and II were directed against Charwil Associates, L.P. (Charwil), Sears' landlord, which managed the Charlestowne Mall on behalf of an affiliated entity, Jamesport Associates (Jamesport).  According to the terms of a lease between Charwil and Sears, Charwil was required to obtain and maintain liability insurance naming Sears as an insured for the common areas of the mall.  In compliance with the lease, Jamesport purchased insurance from Acceptance and Travelers.  In count I of their complaint, plaintiffs alleged that Charwil had breached the indemnification clause contained in its lease with Sears based upon Charwil's failure to defend Sears in the Kresin litigation.  In count II, plaintiffs alleged breach of contract in that Charwil had failed to obtain and maintain adequate insurance as required by the lease.  The counts against Charwil are not at issue in this appeal. 

Counts III through V were directed against Acceptance and Travelers.  In count III, plaintiffs alleged breach of contract against Acceptance because it had refused to defend Sears in the Kresin lawsuit.  In count IV, plaintiffs sought a declaration that Acceptance had a duty to defend and indemnify Sears in the Kresin lawsuit.  In count V, plaintiffs sought a declaration that Travelers, as its excess insurance carrier, had a duty to indemnify Sears.  In response, Acceptance filed a counterclaim wherein it sought a declaration that it did not have a duty to defend any party involved in the Kresin lawsuit.

Acceptance subsequently filed a motion for summary judgment, wherein it asserted that it did not have a duty to defend

or indemnify Sears.  Acceptance argued that the language contained in its policy with Sears did not require it to defend Sears.  Acceptance further argued
 that because the accident causing Kresin's injuries fell within the "automobile exclusion" of the policy, it had no duty to defend or indemnify. 

Travelers also moved for summary judgment.  In its motion, Travelers adopted Acceptance's argument that indemnification was barred based upon the automobile exclusion.  Travelers argued that because it was an excess insurer, it had no duty to indemnify because Acceptance was not obligated to defend or indemnify.  

In a written order dated February 16, 2001, the trial court found that Acceptance had a duty to defend based upon the language contained in the policy's "Endorsements."  However, after reviewing the language contained in the automobile exclusion and the allegations contained in Kresin's complaint, the trial court ruled that Acceptance was justified in its refusal to defend Sears in the Kresin lawsuit.  This conclusion was based upon its determination that the primary business of the automobile center was maintenance and use of vehicles, which was expressly covered in the automobile exclusion.  In its ruling, the trial court recognized that Sears had asserted that a liberal construction of the allegations contained in the Kresin complaint established that the allegations could have potentially fallen within the parking exception to the automobile exclusion within the policy.  

Citing case law for the proposition that where no duty to defend exists, there is no duty to indemnify, the trial court ruled that Acceptance was entitled to judgment as a matter of law on counts II and III of the amended third-party complaint.  Regarding Traveler's motion for summary judgment, the trial court granted the motion, finding that because Acceptance had no duty to indemnify, Travelers, as an excess carrier, could not have a duty to indemnify broader than Acceptance's duty.  

In an order dated October 30, 2001, the trial court found that there was no just cause to delay enforcement or appeal of its February 16, 2001, order.  Plaintiffs now appeal.

ANALYSIS

On appeal, plaintiffs contend that the trial court erred in granting summary judgment in favor of its insurance carriers.  They argue that because Jijon was "unparking" the van when Kresin was struck, the parking exception contained in the policy required coverage from its insurers.

Pursuant to the terms of the policy at issue, coverage did not extend under the automobile exclusion to:

" 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and 'loading and unloading.' "  

The policy provided an exception to the automobile exclusion for: "Parking an 'auto' on, or on the ways next to, premises you own or rent, provided the 'auto' is not owned by or rented or loaned to you or the insured ***."    

When construing an insurance policy, the primary function of this court is to ascertain and enforce the intentions of the parties as expressed in the agreement.  
De Los Reyes v. Travelers Insurance Cos.
, 135 Ill. 2d 353, 358 (1990).  When ascertaining the meaning of the words used in the policy and the intent of the parties, we are to construe the policy as a whole, while taking into account "the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract."  
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 391 (1993).  The construction of the provisions contained in an insurance policy is a question of law that can properly be decided in a motion for summary judgment.  
Crum & Forster
, 156 Ill. 2d at 391.  Summary judgment is appropriate when there is no genuine issue of material fact and the moving party's right to judgment is clear and free from doubt.  
Illinois Central R.R. Co. v. Accident & Casualty Co. of Winterthur
, 317 Ill. App. 3d 737, 744 (2000).  When ruling on a motion for summary judgment, it is proper to construe all evidence in the light most favorable to the nonmoving party and strictly against the moving party.  
Illinois Central R.R.
, 317 Ill. App. 3d at 744.  Our review
 of the trial court's granting of summary judgment is 
de
 
novo
.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102 (1992).

Insurance policies are to be liberally construed in favor of coverage, and where an ambiguity exists in the terms of the contract, the ambiguity will be resolved in favor of the insured and against the insurer.  
State Security Insurance Co. v. Burgos
, 145 Ill. 2d 423, 438 (1991).  The duty of an insurer to defend its insured is much broader than its duty to indemnify.  
Outboard Marine
, 154 Ill. 2d at 125.  When determining whether the insurer has a duty to defend, the court must compare the allegations contained in the underlying complaint to the language contained in the policy.  
Outboard Marine
, 154 Ill. 2d at 125.  While liberally construing the underlying complaint in favor of the insured, if the court determines that the allegations fall within, or potentially within, coverage under the policy, the insurer has a duty to defend the insured against the underlying complaint.  
Outboard Marine
, 154 Ill. 2d at 125. 
 A duty to indemnify arises if the insured's activity and the resulting loss or damage 
actually
 fall within a policy's coverage.  
Outboard Marine
, 154 Ill. 2d at 128.  The insurer bears the burden of establishing that a claim falls within a provision that limits or excludes coverage.  
Pekin Insurance Co. v. L.J. Shaw & Co.
, 291 Ill. App. 3d 888, 892 (1997).

At oral argument, plaintiffs raised for the first time on appeal that the automobile exclusion at issue may be unenforceable under 
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d 369 (2001).  In that case, the supreme court held that an automobile business exclusion of liability coverage in a motor vehicle liability policy was void because it violates the public policy requiring liability coverage for permissive users.

Initially, we note that pursuant to Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)), arguments raised for the first time on appeal at oral argument are waived.  See 
Hinshaw v. Coachmen Industries, Inc.
, 319 Ill. App. 3d 269, 275 (2001).  Notwithstanding waiver, the 
Smith
 case does not support plaintiffs' position.  

In 
Smith
, a man and his female companion went to Harrah's casino, where they had the man's car valet parked.  When the car was retrieved, the woman was injured when it rolled back and struck her.  She filed suit against her companion, the valet driver and Harrah's alleging various acts of negligence.  The companion's motor vehicle liability policy contained an exclusion, which the insurance company invoked to deny coverage to the valet driver and Harrah's.  The court was called upon to consider the exclusion, which provided:

" 'THERE IS NO COVERAGE:

1.  WHILE ANY VEHICLE INSURED UNDER THIS SECTION IS: 

***

b.  BEING REPAIRED, SERVICED OR USED BY ANY 
PERSON
 EMPLOYED OR ENGAGED IN ANY WAY IN A 
CAR BUSINESS
. ***

*** 

Car Business
 -- 
means a business or job where the purpose is to sell, lease, repair, service, transport, store or park land motor vehicles or trailers.' "  (Emphasis in original.)  
Smith
, 197 Ill. 2d at 372-73.

The supreme court agreed with the appellate court that this exclusion is unenforceable because it directly conflicts with section 7-317(b)(2) of the Illinois Vehicle Code (Vehicle Code), which provides that a motor vehicle liability policy "[s]hall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured."  625 ILCS 5/7-317(b)(2) (West 1998).  

The supreme court also relied upon its own holding in 
State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group
, 182 Ill. 2d 240 (1998), where the court considered section 7-601(a) of the Vehicle Code, which requires that vehicles be insured through a liability insurance policy, and section 7-317(b)(2) and concluded that when read together, the sections mandate that " 'a liability insurance policy issued to the owner of a vehicle must cover the named insured and any other person using the vehicle with the named insured's permission.' "  
Smith
, 197 Ill. 2d at 373, quoting  
Universal Underwriters
, 182 Ill. 2d at 244.  The court in 
Smith
 concluded that the automobile business exclusion in the insurance policy violated the public policy "mandat[ing] that a motor vehicle liability policy, or a liability insurance policy, cover the named insured and any other person using the vehicle with the named insured's permission."  
Smith
, 197 Ill. 2d at 374.  Because this public policy was violated, the supreme court ruled that the automobile business exclusion provision was void and therefore, unenforceable.  
Smith
, 197 Ill. 2d at 374. 

We do not find that the 
Smith
 case mandates reversal of the trial court's ruling.  At issue in 
Smith
 was an interpretation of provisions of the Vehicle Code as they relate to a motor vehicle liability policy.  The instant case does not involve a motor vehicle liability policy.  Rather, it involves a comprehensive general liability (CGL) policy purchased by Jamesport to insure against injuries occurring in the common areas of the mall.  Nothing in the Vehicle Code requires Jamesport to insure drivers under a CGL policy.

Because indemnification is at issue, it is proper to consider the evidence presented at trial.  The evidence at trial established that prior to Jijon's entering the van, it had been worked on at the automotive center and was in a bay on an alignment rack.  When asked at trial what his purpose in entering the van was, Jijon responded that he had been asked "to pull the vehicle out and road test it, make sure it drove straight, and that was it."  Jijon explained that before striking Kresin, he had backed the van off the alignment rack and continued backing the vehicle to a perimeter road.  Once there, he waited until "several cars went by" and then proceeded to continue backing, until the van came to rest upon Kresin.  Jijon explained that when Kresin was struck, he had intended to back the vehicle across the eastbound lane and dividing line of the perimeter road into the westbound lane.

Plaintiffs do not contest the trial court's determination that the primary business of the automotive center at Sears was the maintenance and use of vehicles.  Rather, they look to the language contained in the parking exception and insist that "backing out" a vehicle before being able to begin a road test is synonymous with "unparking."  They argue that the process of unparking must be "conceptually divorced" from the road test or the parking exception would be rendered a nullity.

Acceptance argues that the interpretation advanced by plaintiffs stretches the meaning of the terms "parking" and "unparking" to encompass virtually every action of driving an automobile.  Acceptance believes that backing the van out of the bay and taking it for a road test is nothing more than a continuation of the maintenance Sears was performing on the van.  Therefore, Acceptance has no duty to defend plaintiffs as Jijon's actions fell squarely under the automobile exclusion.  Similarly, Travelers, in reliance upon the automobile exclusion in the policy, asserts that recovery by plaintiffs is barred because the facts at trial establish that "maintenance" was being performed on the van that Jijon was "using" or "operating" at the time Kresin was injured.

In support of its claim that maintenance was being performed on the van at the time it struck Kresin, Travelers directs us to the case of 
State Farm Mutual Automobile Insurance Co. v. McAnally
, 49 Ill. App. 3d 475 (1977).  In that case, after making repairs on an automobile, the repairman struck a pedestrian while returning it to the owner.  The owner's insurance policy had an exclusion for damages that occurred while the vehicle was being  " 'used by any person while such person is employed or otherwise engaged in an automobile business ***.' "  
McAnally
, 49 Ill. App. 3d at 477.  The definition of "automobile business" within the policy included the "repairing" of motor vehicles.  The trial court granted summary judgment in favor of the insurance company, which argued there was no coverage under the above exclusion.  On appeal, the driver of the vehicle argued that because the "delivery" of the vehicle was not included in the definition of "automobile business," the trial court erred in denying coverage under the policy.  This court rejected the argument, stating that "Illinois courts have been in general accord that delivery of an automobile is an integral part of the repair business."  
McAnally
, 49 Ill. App. 3d at 478-79.

Recognizing that the instant policy does not define the term "parking," plaintiffs direct our attention to 
St. Louis County v. Taggert
, 809 S.W.2d 476 (Mo. App. 1991), where the Missouri Court of Appeals was called upon to distinguish between the terms "parking" and "storing."  In so doing, the court explained that "Parking connotes transience while storage denotes a certain degree of permanency."  
Taggert
, 809 S.W.2d at 478. 

Relying upon 
Taggert
 for the proposition that "parking connotes transience," plaintiffs further argue that the process of parking also includes "unparking," or put differently, moving the vehicle from a stationary parking position.  In support of this construction of the parking exception, plaintiffs direct our attention to a series of cases that reference the process of unparking.  See, 
e.g.
, 
Becker v. Colonial Parking, Inc.
, 409 F.2d 1130, 1136 n.31 (D.C. 1969) ("It was necessary to move the cars about on the lot to enable parking and unparking"); 
Raffensperger v. Towne
, 59 Wash. 2d 731, 739, 370 P.2d 593, 597 (1962) (Donworth, J., concurring) ("The two cars had been stationary at the curb for some time prior to appellant husband's attempt to unpark his car"); 
People v. Weber
, 401 Ill. 584, 586 (1948) ("defendant forced his way into the car as she was unparking in the downtown area of Peoria"). 

We agree with Acceptance and Travelers that at the time Kresin was injured, maintenance was being performed on the van that struck her.  Jijon testified at trial that he was moving the van in order to take it on a road test.  Clearly, if the "delivery" of a vehicle after repair work has been performed on it is an integral part of the repair business (
McAnally
, 49 Ill. App. 3d at 478-79), a test drive is "maintenance," as used in the automobile exclusion in the policy at issue here.
(footnote: 2)  Therefore, we find that the trial court properly ruled that the automobile exclusion in the policy at issue barred coverage.  

Plaintiffs' citation to cases using the word "unpark" does nothing to advance their claim of error.  Webster's dictionary defines "unpark" as "to remove from a parking place."  
Webster's Third New International Dictionary
 2505 (1993).  It appears from photographs contained in the record that the location where the van struck Kresin was more than just a few feet from its original position on the alignment rack.  According to Acceptance, Jijon had traveled about 34 feet before Kresin was hit.  At the time of the accident, Jijon had already removed the van from its parking place, which was the bay of the automotive center, and continued traveling, albeit in reverse, across the apron until he came to the perimeter road.  Jijon then stopped, waited for traffic to pass and then again started to move in reverse.  It was at this point that Kresin was struck.  

Contrary to plaintiffs' view, instead of characterizing this movement as "unparking," we find it more appropriate under the facts of this case to characterize it as backing up to get to a destination; the westbound lane of the perimeter road. 
 Therefore, we find that the parking exception does not require Acceptance and Travelers to indemnify plaintiffs.  Thus, the trial court did not err in granting summary judgment in favor of the insurance carriers.  

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

REID and HARTIGAN, JJ., concur.

FOOTNOTES
1:
The judgment of the trial court was affirmed in 
Kresin v.

Sears, Roebuck & Co.
, 316 Ill. App. 3d 433 (2000). 

2:
We recognize that based upon the supreme court's holding in 
Smith
, it does not appear that the insurance carrier in 
McAnally
 could now deny coverage under the exclusion at issue in that case.  However,
 because we are relying upon 
McAnally
 for its analysis with respect to the definition of "automobile business," we find that the 
Smith
 case has no bearing upon our citation to 
McAnally
.