Generali U.S. Branch ("Generali") appeals from the trial court's summary judgment for The Boyd School, Inc. ("the School"), in the School's action against Generali. We affirm.
The School is a residential institution for boys with learning and behavioral problems. Its facilities include a group home for older boys. The residents of the group home are supervised by houseparents. In April 1999, Joe Ingram and his wife, Kelly, were the houseparents during the week, and Joe's brother, John Ingram, and his wife, Amy, were the houseparents during the weekends.
John and Amy have a young daughter, Victoria ("Torey"), who was at the group home on Friday, April 23, 1999. Joe and Kelly were keeping Torey while John and Amy went home to pack clothes in preparation for their weekend-houseparent duty. While Joe and Kelly were keeping Torey, a group-home resident telephoned from a nearby restaurant where he worked, telling the person who answered the telephone that he needed his Social Security *Page 214 
card, which was in his wallet at the home. Joe decided he would take the wallet to the resident at the restaurant.
As Joe prepared to leave the group home in his personal automobile, two residents asked to ride with him, and Joe allowed them to do so. As Joe was placing his nine-month-old son in the car, Torey came out of the house and asked if she could go with him. Joe told Torey that she could not go, and he instructed her to go back inside the group home. Joe finished putting his son into the car, and he did not see Torey; he assumed she had followed his direction and gone back inside.
In moving his automobile from the parking space, Joe first backed up and then moved forward. As he moved forward, he heard a noise beneath the automobile. Joe stopped, opened his door, and looked beneath the vehicle, where he found Torey. Torey suffered serious injuries as the result of the accident.
At the time of the accident, a comprehensive general liability insurance policy issued by Generali to the School was in effect. The liability coverage of the policy provided, in pertinent part, that "[Generali] will pay on behalf of the [School] all sums which the [School] shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance applies, . . . and [Generali] shall have the right and duty to defend any suit against the [School] seeking damages on account of such bodily injury." The liability coverage was subject to certain exclusions, including an automobile exclusion, which provided, in pertinent part:
 "This insurance does not apply . . . to bodily injury . . . arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any automobile . . . owned or operated by or rented or loaned to any insured, or . . . any other automobile . . . operated by any person in the course of his employment by any insured."
This automobile exclusion was subject to a parking exception, which provided:
 "[B]ut this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any insured."
The policy included an endorsement modifying the liability coverage with respect to the operation of any school. Specifically, the endorsement included a transportation-of-pupils exclusion, which provided:
 "4. Transportation of Pupils: With respect to the transportation of students or pupils, [the automobile exclusion] of the policy [is] replaced by the following:
 "The insurance does not apply to bodily injury . . . arising out of the ownership, maintenance, operation, use, loading or unloading of any . . . automobile . . . owned, operated or hired by or for the insured or any officer, employee or member of the teaching, supervisory or administrative staff thereof. For the purpose of this exclusion the word `hired' shall be deemed to include any contract to furnish transportation of pupils to and from schools."
Amy, acting individually and as Torey's mother and next friend, and John sued the School. They alleged that the accident resulted from Joe's negligence or wantonness while he was acting within the line and scope of his employment by the School. The complaint sought both compensatory and punitive damages. The School later sued Generali, seeking, in pertinent *Page 215 
part, a declaration that Generali was obligated by the general liability policy it issued to the School "to defend and indemnify the [School] . . . with respect to the . . . underlying motor vehicle accident and civil action."
Generali filed an answer, asserting in its answer a counterclaim. In its pleadings, Generali alleged that the policy provided the School no coverage with respect to the accident, relying upon the automobile exclusion. Shortly thereafter, the School filed a motion for a summary judgment, contending that coverage for the accident existed under the parking exception to the automobile exclusion. In response to the School's motion, Generali filed its own motion for a summary judgment, contending that the transportation-of-pupils exclusion precluded coverage and that the parking exception to the automobile exclusion was inapplicable.
The trial court held hearings on the summary-judgment motions on February 18 and March 17, 2003. On March 17, Generali filed a motion to amend its answer and counterclaim to add statements that it was relying upon the transportation-of-pupils exclusion. The School objected to the motion, arguing it was untimely. Generali's motion to amend remained pending until April 7; on that day, the trial court granted the School's motion for a summary judgment, denied Generali's motion for a summary judgment, and entered conflicting orders concerning Generali's motion to amend.
In its summary-judgment order, the trial court "declare[d] that [the School] has liability coverage under the policy issued to it by Generali . . . for the claims asserted against [the School] in the underlying civil action [brought by the Ingrams], and Generali . . . is obligated under the policy to defend and indemnify [the School] against these claims." In that same order, the trial court denied Generali's motion to amend, and "disallow[ed] Generali's proposed amendment to its answer and counterclaim." Further, the trial court stated "that had it granted the motion to amend, it would not have affected [its] rulings on the motions for summary judgment." However, the trial court, without explanation, entered another order on April 7, and that order, appearing on the face of Generali's motion to amend, stated simply, "MOTION GRANTED." (Emphasis added.)
Generali and the School agree that this appeal presents two substantive issues: (1) Whether the transportation-of-pupils exclusion precludes coverage for the claims arising from Torey's bodily injuries, and, if not, (2) whether the parking exception to the automobile exclusion provides coverage for those claims. While Generali also raises procedural issues concerning the trial court's conflicting orders on Generali's motion to amend its answer and counterclaim, our resolution of the substantive issues pretermits any discussion of the procedural issues.
The transportation-of-pupils exclusion applies, replacing the automobile exclusion, only "[w]ith respect to the transportation of students or pupils." In its principal brief, Generali argues:
 "In the present case, it is undisputed that the injury to the minor plaintiff arose from Joe Ingram's use of an automobile, that at the time of the loss Ingram was an employee of Boyd School, and that Ingram was operating an automobile that he owned. Accordingly, the only issue concerning the application of this provision is whether the injury to the minor plaintiff occurred `with respect to the transportation of students or pupils.'
". . . . *Page 216 
 ". . . [I]t is undisputed that, at the time of the loss, two students of Boyd School were riding in Joe Ingram's car . . . and that Joe Ingram was an employee of Boyd School and was operating a vehicle that he owned. It is also undisputed that, at the time, Joe Ingram was on an errand for Boyd School and was acting within the scope of his employment. In light of these undisputed facts, it is clear that the transportation of pupils exclusion applies under the facts of the claim against Boyd School and that coverage is, therefore, excluded under the terms of the transportation of pupils exclusion contained in the colleges or schools endorsement."
Generali's brief, at 34, 39. The School, on the other hand, argues that the transportation-of-pupils exclusion does not apply under the undisputed facts of this case. We agree with the School.
"Exceptions to coverage in a policy of insurance must be interpreted as narrowly as possible in order to provide maximum coverage of the insured." Twin City Fire Ins. Co. v. Alfa Mut.Ins. Co., 817 So.2d 687, 695 (Ala. 2001). Therefore, we hold that, although two students were in Joe's automobile at the time of the accident, the underlying claim did not arise "[w]ith respect to the transportation of [those] students." Indeed, Joe has not been accused of breaching any duty he owed to the students; instead, he has been accused of breaching duties owed by him to his young niece. Generali has cited no case compelling a contrary conclusion concerning the scope of the exclusion. In fact, the cases it cites involved injuries to students. SeeBeatty v. Charlotte-Mecklenburg Bd. of Educ., 99 N.C.App. 753,394 S.E.2d 242 (1990); Whittington v. Sowela Technical Inst.,438 So.2d 236 (La.Ct.App. 1983).
Having concluded that the transportation-of-pupils exclusion is inapplicable, we must now determine whether coverage is afforded by the parking exception to the automobile exclusion. In that regard, Generali argues:
 "Under the undisputed evidence in this case, i.e., that the injury to the minor plaintiff arose from Joe Ingram's use of an automobile in the course of his employment by Boyd School, coverage for the claims against Boyd School would be excluded by the automobile exclusion. However, Boyd School seeks to invoke the provision of the parking exception to the automobile exclusion to bring the claims against it within coverage under the terms of the policy. . . .
". . . .
 "In the present case, it is undisputed that the vehicle being operated by Joe Ingram at the time of the accident was not owned by or rented to Boyd School. However, it is Generali's position that, at the time of the accident, Ingram's vehicle had been loaned to Boyd School and that the parking exception does not apply to extend coverage to the loss in question."
Generali's brief, at 41. In response, the School argues that Joe's automobile had not been loaned to it at the time of the accident. We agree with the School.
The parking exception provides no coverage if Joe's automobile was being "loaned to" the School at the time of the accident. The phrase "loaned to" is not defined in the policy, and this Court has never defined the phrase in a similar context. However, the Court of Civil Appeals construed this phrase in United StatesFidelity Guaranty Co. v. Perry, 361 So.2d 594, 597
(Ala.Civ.App. 1978), stating, in pertinent part:
 "The evidence does not show . . . a loan of the [employee's] vehicle to or in behalf *Page 217 
of [his employer]. The use of his automobile by the employee . . . in furtherance of his employer's interest, even with actual or implied permission, does not of itself show a loan to the employer. Trinity Universal Ins. Co. v. Cincinnati Ins. Co., 513 F.2d 915 (6th Cir. 1975); Faribault Canning Co. v. Northwestern Nat'l Cas. Co., 298 F.2d 58 (7th Cir. 1961)."
Cf. American Econ. Ins. Co. v. Thompson, 643 So.2d 1350,1355-56 (Ala. 1994) (an employee was using a third person's
vehicle in furtherance of employer's business). We agree with the Court of Civil Appeals that where nothing more than an employee's use of his own vehicle in furtherance of his employer's business has been shown, a loan of the vehicle to the employer has not been established. Therefore, the parking exception provides coverage under the facts of this case if the accident involved "the parking of [Joe's] automobile."
According to Generali, Joe was moving his vehicle from a parking space on the School's premises at the time of the accident.
 "Joe got into his car and backed out of the parking space. Joe then began to pull forward and heard a noise from beneath the car. Joe then looked under the car and saw that Torey was under the car. Joe testified that the accident occurred as he was backing out of a parking space in a parking area on Boyd School property adjacent to the group home. At the time of the accident, Dr. Boyd [president of the School] happened to be driving in front of the group home and saw Torey underneath Joe's car. After seeing Torey, Dr. Boyd called out to Joe and he stopped his car. Dr. Boyd testified that Joe had backed up approximately 10 feet and had pulled forward no more than 15 feet at the time of the accident."
Generali's brief, at 9 (citations to the record omitted). Generali contends that, "[u]nder these facts, [Joe] was not engaged in parking his vehicle at the time of the accident."Id. at 48-49. The School, however, argues that "the accident [clearly] arose from the parking of an automobile on [the] School's premises." The School's brief, at 19. We agree with the School.
Speaking of the parking exception, Generali states: "This provision has been routinely referred to in other jurisdictions as a `parking attendant' or `valet parking' exception.Lee-Lipstreu v. Chubb Group, 329 F.3d 898, 902 (6th Cir. 2003)." Generali's brief, at 40. Obviously aware that parking attendants regularly park and, later, "unpark" vehicles, Generali does not argue that the act of moving a vehicle from a parking space is not within the scope of "parking," as that term is used in its policy. Instead, citing only Sears, Roebuck Co. v.Acceptance Insurance Co., 342 Ill.App.3d 167, 275 Ill.Dec. 965,793 N.E.2d 736 (2003), Generali argues that Joe had completed the act of "unparking" before the accident occurred and that the parking exception is therefore not applicable.
In Sears, a pedestrian was struck by a van driven by Alfredo Jijon, an employee of a Sears automotive center. The pedestrian obtained a judgment against Sears and Jijon, who sought indemnification from Acceptance Insurance Company. "Acceptance . . . argued that because the accident causing [the pedestrian's] injuries fell within the `automobile exclusion' of [its] policy, it had no duty to defend or indemnify." 342 Ill.App.3d at 170, 275 Ill.Dec. 965, 793 N.E.2d at 738. After the trial court entered a summary judgment for Acceptance, Sears and Jijon appealed, "contend[ing] that the trial court erred in granting summary judgment because it failed to consider the `parking exception' contained in the policy." *Page 218 342 Ill.App.3d at 169, 275 Ill.Dec. 965, 793 N.E.2d at 738. More specifically, "[t]hey argue[d] that because Jijon was `unparking' the van when [the pedestrian] was struck, the parking exception contained in the policy required coverage from its insurer ."342 Ill.App.3d at 170, 275 Ill.Dec. 965, 793 N.E.2d at 739.
In Sears, as in this case, the undisputed facts surrounding the accident were important. The Illinois court summarized the evidence presented at the underlying trial, stating:
 "The evidence at trial established that prior to JiJon's entering the van, it had been worked on at the automotive center and was in a bay on an alignment rack. When asked at trial what his purpose in entering the van was, Jijon responded that he had been asked `to pull the vehicle out and road test it, make sure it drove straight, and that was it.' Jijon explained that before striking [the pedestrian], he had backed the van off the alignment rack and continued backing the vehicle to a perimeter road. Once there, he waited until `several cars went by' and then proceeded to continue backing, until the van came to rest upon [the pedestrian]. Jijon explained that when [the pedestrian] was struck, he had intended to back the vehicle across the eastbound lane and dividing line of the perimeter road into the westbound lane."
342 Ill.App.3d at 173, 275 Ill.Dec. 965, 793 N.E.2d at 741-42. Under those facts, Sears and Jijon contended that the accident occurred while Jijon was "unparking" the vehicle, and that, therefore, the parking exception provided coverage. In support of their contention, they cited cases that "referenced the process of unparking." 342 Ill.App.3d at 175, 275 Ill.Dec. 965, 793 N.E.2d at 743. However, the court rejected their contention and affirmed the summary judgment for Acceptance, stating:
 "[Sears and Jijon's] citation to cases using the word `unpark' does nothing to advance their claim of error. Webster's dictionary defines `unpark' as `to remove from a parking place.' Webster's Third New International Dictionary 2505 (1993). It appears from photographs contained in the record that the location where the van struck [the pedestrian] was more than just a few feet from its original position on the alignment rack. According to Acceptance, Jijon had traveled about 34 feet before [the pedestrian] was hit. At the time of the accident, Jijon had already moved the van from its parking place, which was the bay of the automotive center, and continued traveling, albeit in reverse, across the apron until he came to the perimeter road. Jijon then stopped, waited for traffic to pass and then again started to move in reverse. It was at this point that [the pedestrian] was struck.
 "Contrary to [Sears and Jijon's] view, instead of characterizing this movement as `unparking,' we find it more appropriate under the facts of this case to characterize it as backing up to get to a destination; the westbound lane of the perimeter road. Therefore, we find that the parking exception does not require Acceptance . . . to indemnify [Sears and Jijon]. Thus, the trial court did not err in granting summary judgment in favor of [Acceptance]."
342 Ill.App.3d at 175-76, 275 Ill.Dec. 965, 793 N.E.2d at 743.
Contrary to Generali's conclusory arguments, Sears does not support its contention that Joe was not engaged in parking his vehicle at the time of the accident. Concerning Sears, Generali states:
 "However, the court in [Sears] concluded that the automotive center employee, *Page 219 who was backing the vehicle out of a service bay where it had been parked to take the vehicle on a road test was not engaged in parking the vehicle for purposes of the parking exception and that coverage was, therefore, excluded."
Generali's brief, at 49-50 (emphasis added). Generali misstates the facts in Sears, where it was undisputed that Jijon had already moved the vehicle from the service bay and was operating it on a roadway at the time of the accident. Here, on the other hand, Generali's own version of the facts indicates without dispute that Torey was injured as Joe was leaving a parking space in a designated parking area on the School's property. There is no evidence indicating that Joe had moved his vehicle any significant distance before Torey was struck. Obviously, unlike Jijon, Joe had not removed his vehicle from its parking place and entered a roadway before the accident. As the School argues, "the accident [clearly] arose from the parking of an automobile on [the School's] premises."
Thus, under the facts of this case, and based upon the arguments submitted, we conclude that the parking exception to the automobile exclusion provided coverage for the underlying accident. For that reason, the trial court did not err in granting the School's motion for a summary judgment, or in denying Generali's motion for a summary judgment. The judgment of the trial court is affirmed.
AFFIRMED.
HOUSTON, SEE, LYONS, and JOHNSTONE, JJ., concur.