*In re* R.M. *et al.* (The People of the State of Illinois, Petitioner-Appellee, v. S.M. *et al.*, Respondents-Appellants).

First District (4th Division)    No. 1—98—1662

Opinion filed August 26, 1999.

Patrick. T. Murphy, Public Guardian, of Chicago (Ron Fritsch, Assistant Public Guardian, of counsel), for appellees.

Donna L. Ryder, of Homewood, for appellants.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Nancy Grauer Kisicki, and Gunta Z. Hadac, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:
At an adjudicatory hearing, the circuit court found respondents

Shirley M. and William M. had physically abused and neglected their minor children, Ellen M. and Eren M., and Shirley M.'s minor children, Ricky M., Danny T., Amy M., and Michelle M.[1]

At a subsequent dispositional hearing, the court ruled respondents unable to care for the children and all six minors were made wards of the court and placed in the custody of the Department of Children and Family Services (DCFS).

Respondents[2] now appeal, contesting only the trial court's finding of physical abuse. Respondents stipulated at the adjudicatory hearing that William M. "spanked four year old Ellen and six year old Erin [sic] with a belt [which] constituted neglect injurious environment as to all minors." Therefore, respondents do not contest the finding of neglect, nor do they contest the minors' placement in DCFS custody.

Respondents contend, however, it was against the manifest weight of the evidence for the court to have found marks on Ellen's hands to be cigarette burns inflicted by Shirley and William. The State's evidence, respondents say, consisted solely of hospital records containing Ellen's uncorroborated hearsay statements and incomplete and inconclusive medical reports. Respondents further contend it was an abuse of discretion for the trial court to have given these medical reports greater credence than the live testimony of an expert witness and the "unimpeached" testimony of respondents.

For reasons that follow, we affirm the trial court's adjudicatory order and its finding of physical abuse.

## FACTS

Shirley M. has six children: Ricky, born December 19, 1983; Danny, born December 10, 1984; Amy, born June 26, 1986; Michelle, born February 28, 1989; Eren, born January 3, 1991; and Ellen, born January 31, 1993. Shirley M. and Rick M. are the biological parents of Ricky, Danny, Amy, and Michelle. Shirley M. and William M. are the biological parents of Eren and Ellen. All of the children lived with respondents, Shirley M. and William M., until January 1997.

One day in January 1997, Ellen went to preschool with a bruise on her face. Ellen's school counselor called the DCFS abuse hotline. As a result of this report, Ellen, Eren, Michelle, and Amy were admitted to Mount Sinai Hospital's "Under the Rainbow" program on January 23, 1997, for an assessment to determine if they were being physically abused.

The children stayed at Mount Sinai Hospital until January 28,

---

[1]Shirley M.'s four oldest children have a different father, Rick M., who was not a party to the proceedings.

[2]Respondent William M. was given leave to adopt the brief of respondent Shirley M.

1997. During this time the staff, which consisted of a social services worker, intake coordinator, doctor, psychologist, and child interviewer, concluded that Ellen had been physically abused (cigarette burns on her hands) and the other children were neglected. Based on these conclusions, the State took all of Shirley M.'s children into custody and filed petitions for adjudication of wardship on January 28, 1997. The petition for Ellen alleged she was neglected due to an injurious environment and was physically abused due to cigarette burns on her hands. The petitions for the other children alleged they were neglected due to an injurious environment and abused based on substantial risk of physical injury. A temporary custody hearing was held and all six minors were placed in the temporary custody of DCFS.

On March 30, 1998, an adjudication hearing pursuant to section 2—21 of the Juvenile Court Act of 1987 (705 ILCS 405/2—21 (West 1996)) was held. At this hearing it was stipulated by all of the parties: (1) if called, investigator Rhonda Adams would testify Eren reported respondent William M. spanked his sister Ellen and him with a belt; (2) William M.'s act of spanking Ellen and Eren with a belt constituted neglect based on an injurious environment as to all of the minors; and (3) four years earlier DCFS received an abuse report concerning Ricky M. and the report was "indicated" because William M. admitted striking Ricky, leaving red marks.

The trial court then admitted into evidence the State's sole exhibit—the medical records from Mount Sinai for Ellen, Amy, Michelle, and Eren concerning their examination by the staff of the "Under the Rainbow" program from January 23 to January 28, 1997.

The medical records contained a final report by the Mount Sinai team in which Ellen was diagnosed as a physically abused child. A physical examination form noted healing circular lesions, which were thought to be marks from cigarette burns, on both of Ellen's hands. The records also contained the report of a consultant who spoke with Ellen on January 27, 1997. He reported that Ellen said the two marks on her right hand were cigarette burns inflicted by her parents. Ellen told him the mark on her left hand was caused when her brother Eren pushed her into a heater. Though Ellen had not told anyone else the burns were cigarette burns, the consultant opined Ellen's reluctance to report the cigarette burning earlier to the medical staff may have been a result of her fear of the African-American staff on the unit because Ellen said her father told her to "stay away from black people."

The medical records submitted at trial showed Michelle was diagnosed as suffering from child maltreatment syndrome. The Mount Sinai staff concluded Michelle was neglected because of inadequate

food, injurious environmental conditions, and exposure to physical violence between her parents. The reports noted that Michelle had denied any physical or sexual abuse, despite her admission that respondent William M. spanked her and her siblings with a belt or his hand. When Michelle was asked general questions about abuse and neglect, Michelle told the interviewer there were things "mommy [did not] want [her] to tell" and described these things as "family secrets."

Michelle said she did not know what happened to her sister Ellen's hands, but she appeared nervous and said Ellen told her she was burned on the heater in the dining room while her mother was dressing her after a bath. Then Michelle volunteered that both she and Ellen were burned on their buttocks and that the burns were caused by the heater in the dining room.

Amy's medical records showed she, too, was diagnosed as suffering from child maltreatment syndrome. A report showed that Amy initially denied that either of her parents hit her or her siblings. But when she was told all three of her siblings reported being hit with the belt by her dad, she appeared nervous and said, "well a little."

Eren's medical records showed that Eren was diagnosed as having "relational problems," which included corporal punishment by parents and inappropriate touching by his sister Michelle. Eren had reported that respondent William M. hit him and his siblings with a belt or with his hand. When asked about Ellen, Eren said he did not know how she got the circle burns. He said he didn't see Ellen get burned, but his mother told him what happened.

Eren told the child interviewer that his parents screamed at each other and also hit and kicked one another. Eren also said his sister Michelle touched his penis inside his pants with her hand. He said this occurred in the closet and he did not tell his mother because he would "get in trouble."

Respondent Shirley M. testified at the adjudicatory hearing. Shirley explained that Rick M. is the biological father of her four oldest children—Ricky, Danny, Amy, and Michelle. Shirley admitted she and Rick used to fight constantly in front of the children.

In December 1989, Shirley said, she began living with William. Though she and William have never been legally married, they have a common law marriage. William is the sole provider for the family and treats all of Shirley's children as his own.

Shirley testified she and William used to "play fight" or "wrestle." But, Shirley explained, they no longer do that because she got hurt about two years earlier. Shirley said William M. also wrestled with the boys, but she denied that the children were ever hurt during those "play fights."

When asked about the two marks on Ellen's hands, Shirley said the one on Ellen's left hand was a burn from a space heater, but she didn't know what caused the injury to Ellen's right hand. Shirley said she had been with Ellen when she burned her left hand. Shirley said she saw Ellen pull her hand away from the heater. Then Shirley picked Ellen up and ran her hand under cold water at the kitchen sink.

Shirley testified that, around mid-January, she noticed a mark on Ellen's right hand which appeared to be a pus-filled blister surrounded by a red area. Shirley said she popped the blister with a needle, cleaned it out, and put a bandage on it. The next day, Shirley said, she put antibiotic cream on it so it would heal. The injury became scabbed as it healed. When the scab came off, a red mark remained on Ellen's hand. Shirley said the scar on Ellen's left hand was larger than the mark on Ellen's right hand. Shirley testified Ellen never told her how her right hand got injured. Ellen never told Shirley it was a cigarette burn.

Shirley described the two space heaters in their home. The one in the kitchen, she said, was three feet tall and made of metal. The space heater in the dining room was twice as large as the one in the kitchen. The heaters were provided by the landlord and could not be replaced. The heaters were kept very hot because there was a broken window in the apartment that the landlord would not fix.

Shirley admitted both she and William M. smoked cigarettes. She denied, however, ever burning Ellen's hand with a cigarette or seeing William burn Ellen's hand with a cigarette. None of the other children ever reported being burned by a cigarette or seeing William burn Ellen's hand with a cigarette.

Respondent William M. testified. He admitted he smoked cigarettes but denied ever burning Ellen's hand with a cigarette or ever seeing Shirley burn Ellen's hand with a cigarette. He said he was told one day near the end of December 1996, when he arrived home from work, that Ellen had burned her left hand. Sometime in mid-January, they noticed that Ellen had what appeared to be an infection on her right hand.

Dr. Leslie Zun testified on William M.'s behalf. Dr. Zun was qualified as an expert in emergency medicine, which included training on skin disorders and burns. He testified that a new cigarette burn was a circular burn, usually the diameter of a cigarette. It would appear swollen and have a whitish appearance in the center surrounded by a reddened area. The center of the burn would be indented and the surrounding tissue would be reddened and mounded around the indented area.

Dr. Zun stated that a dark scab would form over a healing burn

and that a scar, lighter in color and slightly indented from the surrounding normal skin tissue, would remain when it was completely healed. He further testified that other localized skin infections resembled cigarette burns.

Dr. Zun explained the best way to diagnose a circular mark would be to examine the patient and to obtain the patient's medical history. The type of history relevant to making this determination would include a consideration of whether there was trauma involved, whether the child was near cigarettes, and whether the parents smoked cigarettes. Dr. Zun stated he might be able to diagnose a circular mark by its appearance, but that he could not determine with any degree of medical certainty from a review of Ellen's medical records alone whether the circular lesions on Ellen's hands were cigarette burns. There were no pictures of the circular lesions in the medical records, and the records did not contain a description of the size, depth, color, or texture of the marks.

Dr. Zun stated on cross-examination he was unfamiliar with the notations used by doctors in other departments. He explained that a small burn to the hand, depending upon the degree of the burn, could look like anything from normal skin to a red area or a punched-out lesion. He testified that a circular, punched-out lesion approximately the size of a cigarette would be more indicative of a cigarette burn. If the lesion was irregularly shaped or larger or smaller than a cigarette, then it would be unlikely that the lesion was a cigarette burn.

In response to the court's inquiry, Dr. Zun testified that before coming to court he had spoken to counsel for William and that counsel did not say what she thought caused the marks on Ellen's hands. Dr. Zun explained that, before he testified, he had also spoken to counsel for Shirley who told him Ellen could possibly have been burned by a space heater. At the request of Shirley's counsel, Dr. Zun examined the space heater in the family's home to see if it was a possible cause. Dr. Zun did not testify that the heater was a possible cause of Ellen's burns.

At the conclusion of the hearing, the court entered an order finding that all of the children were neglected based on an injurious environment and that Ellen was physically abused by both respondents. Ricky, Danny, Amy, Michelle, and Eren were found to be abused based on substantial risk of physical injury.

Because the court determined the minors were abused and neglected, the case proceeded to a dispositional hearing on April 10, 1998, to determine whether it was in the best interests of the minors that they be made wards of the court. 705 ILCS 405/2—21(2) (West 1996).

At this hearing, Alina Hernandez, a social worker for Catholic Charities, testified she had been in contact with respondents Shirley and William M., who had complied with the counseling and psychological evaluation referrals. Both respondents visited the children and the visits went well. Hernandez further testified that Ricky was placed at Ulich Children's Home and the other children were placed in nonrelative foster care. Although the placements were appropriate and the children were well cared for, all of the children except Ellen had special needs, and Hernandez had referred them all for individual counseling. Because Hernandez was not Ricky's social worker, she recommended that DCFS be appointed guardian of all the children except Ricky.

Katie Barmonje, a social worker at the Ulich Children's Home, testified Ricky was in a specialized program for sexually aggressive children. He received individual psychotherapy, group therapy, anger management therapy, recreational and tutoring resources, and socialization training. She stated his placement was safe and appropriate and recommended DCFS be appointed Ricky's guardian.

At the conclusion of the hearing, the State asked that respondents Shirley M. and William M. be found unable to care for the children. The public guardian joined in the State's request and asked, further, that Rick M. be found unable and unwilling to care for his children.

Counsel for both respondents agreed there should be a finding of inability to care for the children. Respondents, it was reported, recognized their current inability to care for the children. Though they desired to have the children returned to them in the future, respondents agreed this should not happen until after the children completed the current school year and everyone obtained individual and reunification counseling.

The trial court entered a dispositional order finding both respondents unable to care for the children and Rick M. unable and unwilling to care for his children. The court further found that it was in the best interests of the children to be made wards of the court and placed under DCFS guardianship.

## DECISION

Respondents contend the trial court's findings of abuse were against the manifest weight of the evidence because the State's evidence consisted solely of the uncorroborated hearsay statements of three-year-old Ellen contained in the Mount Sinai medical records, which were incomplete and inconclusive.

Since respondents conceded to allegations of neglect at the adjudicatory hearing and conceded to an inability to care for the children at the dispositional hearing, they are not challenging the

adjudicatory and dispositional orders as a whole. They only question the finding of abuse contained within the adjudicatory order.

Our research has revealed no other case in which respondents have challenged only a specific adjudicatory finding in a juvenile court proceeding. Whether, under the facts of this case, the finding of abuse is a moot issue has not been raised by the State or the public guardian. But it is a question we need not consider since we reject respondents' argument that the findings of abuse were against the manifest weight of the evidence.

■ Though out-of-court statements are generally inadmissible hearsay, the Juvenile Court Act provides an exception for the admission of out-of-court statements made by minors pertaining to abuse or neglect. 705 ILCS 405/2—18(4)(c) (West 1996). Section 2—18(4)(c) provides:

> "Previous statements made by the minor relating to any allegations of abuse or neglect shall be admissible in evidence. However, no such statement, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect." 705 ILCS 405/2—18(4)(c) (West 1996).

■ Respondents assert that Ellen's statements were uncorroborated. However, "[c]orroborating evidence is that which by its nature makes it more probable that the child was abused." *In re C.C.*, 224 Ill. App. 3d 207, 214, 586 N.E.2d 498 (1991). In this case, Ellen and three siblings were placed at Mount Sinai Hospital after DCFS received a hotline call from a school counselor reporting a bruise on Ellen's face. At Mount Sinai, Ellen was examined and found to have circular scabbed lesions on the top of each hand. Ellen's body chart contained notations stating the circular marks were suspicious for physical abuse. Later, when Ellen was asked about the marks, Ellen reported the marks on her right hand were the result of cigarette burns inflicted by her parents.

■ Respondents argue Ellen's statements were unreliable because she did not consistently say the burns were cigarette burns, nor did she promptly report the burns. They note it was not until four days after Ellen was admitted to Mount Sinai that she said her parents burned her, and she did so only after being questioned about the burns. Respondents rely on *In re A.P.*, 179 Ill. 2d 184, 201, 688 N.E.2d 642 (1997), where our supreme court held a four-year-old's statements regarding sexual abuse were reliable because they were spontaneous, repeated, consistent, and were not made in response to any questioning.

Though the factors listed by the supreme court may be indicia of reliability, they are not the only factors to be considered. It is the

totality of the circumstances surrounding the making of a child's statements which determines whether the statements are sufficiently reliable to support a finding of abuse. *A.P.*, 179 Ill. 2d at 201.

■ Though the delay in Ellen's report of the cause of her burns is somewhat troubling, we must keep in mind that Ellen was not yet four years old when she was examined. More importantly, the Mount Sinai consultant's record indicated that "when explaining the cigarette burns, it appeared that [Ellen] minimized the significance of the events, indicating that this was a part of everyday life in her home." In addition, the consultant concluded Ellen's initial reluctance to report the burns could be reasonably attributed to her fear of the African-American staff on the unit. The medical record contained a notation that Ellen had been reluctant to speak with an African-American physician, even when prompted. Ellen later told the consultant her father told her to "stay away from black people." Under the circumstances presented here, we cannot say Ellen's failure to immediately report the burns destroys the reliability of her later statement concerning the burns.

We also consider Ellen's statements concerning the burns in light of all the evidence, including the respondents' explanation for the burns. We find it significant that William's expert witness, Dr. Zun, testified he visited the respondents' apartment and viewed the heater that allegedly caused the burn to Ellen's hand. Dr. Zun, when questioned by the court, could not say he believed the heater could have caused a circular burn mark.

Respondents' assertions that Ellen's young age and separation from her parents may have led her to accuse her parents of burning her, and respondents' suggestion that interviewer bias might have affected Ellen's reporting, are purely speculative. There is no evidence in the record to suggest Ellen was coached or coaxed into making the statements describing the physical abuse. We find Ellen's statements were sufficiently reliable to support a finding of physical abuse.

■ We also reject respondents' contention that the medical records were incomplete, inconclusive, and insufficient to corroborate Ellen's statements. Respondents rely on *In re J.H.*, 212 Ill. App. 3d 22, 29-30, 570 N.E.2d 689 (1991), but in *J.H.* the court held a social investigation report that contained only a minor's hearsay allegations of abuse and the respondent's denials was insufficient to support an order that the respondent undergo sexual abuse counseling.

Here, Ellen's statements were corroborated by the physical evidence of circular lesions, which the medical staff found to be suspicious for physical abuse (cigarette burns). The other psychological and social reports supported the overall diagnosis that Ellen was physically abused.

Respondents point out the medical records failed to rule out other common causes of skin marks similar in appearance to cigarette burns, to which Dr. Zun testified. Also, the records failed to contain a detailed description or photographs of the marks, so Dr. Zun was unable to offer an opinion on whether the marks were cigarette burns.

Despite these omissions, we cannot say the trial court's finding that the records provided a sufficient diagnosis of physical abuse was against the manifest weight of the evidence. The trial court carefully reviewed the records, found they were "very detailed about Ellen," and concluded they provided a sufficient diagnosis of physical abuse. The trial court found it significant that Dr. Zun had not examined Ellen, was given descriptions of Ellen's injuries only from respondents, and did not have an independent opportunity to determine what stages the burns were in when he gave his testimony. Though a trial court " 'cannot disregard expert medical testimony that is not countervailed by other competent medical testimony or *** evidence' " (see *In re Marcus H.*, 297 Ill. App. 3d 1089, 1096-97, 697 N.E.2d 862 (1998), quoting *In re Ashley K.*, 212 Ill. App. 3d 849, 890, 571 N.E.2d 905 (1991)), in this case, Dr. Zun never examined Ellen and was able to testify only that there might be other reasonable explanations for the circular lesions. He did not testify Ellen's injuries could not have been cigarette burns.

■ A preponderance of the evidence is the standard of proof in abuse cases. *In re D.M.*, 258 Ill. App. 3d 669, 672, 631 N.E.2d 341 (1994). "A trial court's finding of abuse is entitled to great deference on appeal and will be disturbed only if it is found to be against the manifest weight of the evidence." *D.M.*, 258 Ill. App. 3d at 672. Moreover, the trial court is afforded broad discretion when determining the existence of abuse based on its opportunity to observe the conduct and demeanor of the witnesses. *C.C.*, 224 Ill. App. 3d at 215.

■ Here, the trial court heard all of the evidence and had the opportunity to determine the credibility and demeanor of the witnesses. The trial court was not required to place less weight on the medical records because members of the Mount Sinai staff did not testify at the adjudicatory hearing. Similarly, the court did not have to attribute more weight to respondents' testimony merely because they testified. In addition, "[a] trial judge is not bound to accept the opinion of an expert on the ultimate determination." *In re Monica S.*, 263 Ill. App. 3d 619, 626, 637 N.E.2d 728 (1994).

We find Ellen's statements were sufficiently reliable and corroborated to support a finding of physical abuse. For this reason, the dispositional orders and the adjudication orders, which contain a finding of physical abuse for Ellen and a finding of abuse based on

552

substantial risk of serious harm for the remaining children, are affirmed.

Affirmed.

SOUTH, P.J., and HALL, J., concur.