806 N.E.2d 1087 (2004)
347 Ill. App.3d 55
282 Ill.Dec. 499
In the Interest of F.S., Minor-Respondent-Appellee (The People of the State of Illinois, Petitioner-Appellee,
v.
H.W., Respondent-Appellant).
No. 1-02-2159.
Appellate Court of Illinois, First District, Second Division.
March 2, 2004.
*1089 Marv Raidbard, Chicago, for Appellant.
Richard A. Devine, State's Attorney of Cook County, (Renee Goldfarb, Nancy Grauer Kisicki, Sisavanh Baccam Baker, Assistant State's Attorneys, of counsel), Chicago, for Appellee.
Patrick T. Murphy, Office of the Cook County Public Guardian (Charles P. Golbert, Christopher J. Williams, of counsel), Chicago, for Minor-Appellee.
Justice BURKE delivered the opinion of the court:
Respondent H.W., the legal guardian of F.S., a minor, appeals from an adjudication order of the circuit court, finding F.S. to be physically abused, abused based on a substantial risk of injury, and neglected based on an injurious environment, as defined in sections 2-3(2)(i), 2-3(2)(ii), and 2-3(1)(b) of the Juvenile Court Act of 1987(Act) (705 ILCS 405/2-3(2)(i), 2-3(2)(ii), 2-3(1)(b) (West 2002)). Respondent also challenges the trial court's disposition order, finding respondent unable for some reason other than financial circumstances to care for, protect, train, or discipline F.S. because he had "returned to his mother." On appeal, respondent contends that the trial court's findings were against the manifest weight of the evidence. For the reasons set forth below, we affirm.

STATEMENT OF FACTS
Y.G. gave birth to F.S. on June 15, 1997. Y.G. received a job transfer that required her to move from Chicago to Florida, and subsequently sought a legal care plan for four-year-old F.S. in Chicago. Respondent, a friend whom Y.G. had known for approximately two and one-half years, was appointed the legal guardian of F.S. on October 31, 2001.
On December 21, the State filed a petition for adjudication of wardship with the trial court, alleging that respondent did not feed four-year-old F.S. and that respondent's son beat F.S. with an extension cord while respondent was present in the home. The State claimed that, based on these facts, F.S. was neglected and abused pursuant to section 2-3(1)(b) and section 2-3(2)(ii) of the Act. The State later amended the petition to include one count of physical abuse pursuant to section 2-3(2)(i) of the Act.
*1090 The State also filed a motion for temporary custody, arguing there was probable cause that F.S. was being neglected and abused, there was an immediate and urgent necessity to take F.S. into temporary custody, and reasonable efforts could not prevent or eliminate the necessity of removing F.S. from the home. After a temporary custody hearing on December 21, the trial court found that probable cause existed, and F.S. was placed in the temporary custody of the Department of Children and Family Services (DCFS). On December 28, a second temporary custody hearing was held. F.S.' natural mother returned to Chicago to take part in the proceedings and was given temporary custody of F.S. F.S. ultimately returned to Florida with his mother.
On, June 11, 2002, a trial was held on the State's petition for adjudication of wardship. The State called Linda Cook as its first witness. Cook testified that she was employed by DCFS and was assigned to F.S.' case as a child protection service worker. On December 19, 2001, she received a hot line call regarding concerns that F.S. was not being fed properly. She then went to respondent's home. When she met F.S., he had a white cream on his face and, after instructing him to wipe it off of his face, she noticed several marks and bruises on the side of his face. She also saw looped marks and bruises on F.S.' legs, buttocks, arms, and back.
Cook further testified that she took F.S. into protective custody. F.S. then told Cook that the marks and bruises were a result of being whipped by respondent's adopted son, who lived in the house with respondent and F.S. F.S. also told Cook that respondent had been in another room watching television while he was being whipped by respondent's son.
Cook also testified that respondent had stated that F.S. had been living in the household since August 2001. Respondent told Cook that she had become F.S.' legal guardian sometime in September of that year. Cook had questioned respondent about F.S.' eating habits at home. Respondent explained that F.S. never had dinner at home because, after F.S. returned from school and did his homework, he simply went to bed, and she could not wake him when he was asleep.
On cross-examination, Cook specified that she saw loop marks on F.S.' back and legs, three marks on his face, a dark bruise on his eye, and marks all over his back, legs, buttocks, and stomach. Cook described the three marks on F.S.' face as being three long marks that ran from his nose toward his ear. Cook also stated that, with respect to the bruises on F.S.' body, there were "old marks" and "fresh marks."
Cook further testified that she had a conversation with respondent on December 19, 2001, during which respondent had stated that she was unaware of how F.S. had received the marks on his body. Also, during a conversation with respondent in juvenile court on December 21, respondent stated that she had never seen the marks on F.S.' body because she never bathed him, never dressed him, and never saw him without his clothes on. Respondent had also told Cook that she did not take F.S. to the hospital because she had no money. Cook further stated that, during their conversation on December 21, respondent had also told Cook that she (respondent) was deaf. However, Cook testified that on December 19, respondent was responding to questions and apparently could hear from a distance of six or seven feet.
With respect to F.S.' eating habits, Cook stated that, when she spoke to F.S. on December 19 at approximately 4:15 p.m., F.S. told her that he had not eaten that *1091 day. Cook admitted that F.S. had not been to school that day. Cook further admitted that F.S. had never told her that respondent did not feed him.
Ioanna Vateva, M.D., was called by the public guardian, on behalf of F.S., as an expert witness in pediatrics and child abuse. Dr. Vateva testified that she examined F.S. on December 19. Vateva found loop marks on F.S.' face and back and found multiple bruises on F.S.' face, back, and thighs. Vateva stated that loop marks implied that something with two parallel surfaces, such as a belt or bar, had been used over the child's body with significant force. Vateva estimated that the bruises had been made on F.S. less than six weeks before the examination. Vateva's diagnosis was that F.S. had been physically abused. Vateva stated that when she asked F.S. how he received the marks on his body, he never gave her "any good response."
On cross-examination, Dr. Vateva testified that she did not believe that the bruises on F.S. could have been caused by F.S. playing with another child because the marks required "good pressure and good force." Vateva was asked, "Could a fourteen-year-old child who is playing with [a] four-year-old child, wrestling with him, hitting him with an extension cord, could hecould those marks be from that type of play?" Vateva replied, "I guess it's possible." Vateva acknowledged that F.S. did not need to be admitted into a hospital for treatment of the marks.
On July 10, 2002, the trial court found no basis for the State's allegation that F.S. was not fed properly. However, the trial court made findings of physical abuse, abuse based on a substantial risk of injury, and neglect based on an injurious environment pursuant to section 2-3(2)(i), section 2-3(2)(ii), and section 2-3(1)(b) of the Act, respectively. Specifically, the trial court stated:
"First of all, with regard to these injuries, there is medical diagnosis that there was physical abuse.
* * *
Some of the marks [F.S.' body] were described as loop marks that * * * would be made obviously by a belt or extension cord with parallel lines. And that the medical testimony indicates that these injuries were the result of some force.
These injuries are in the medical diagnosis and also consistent with Ms. Cook, the DCP [sic] worker's, observations.
The doctor saw the child on December 19, 2001, and the injuries were less than six weeks old.
I think those injuries corroborate the minor's statement that [respondent's son] whipped him with an extension cord.
So I think the evidence is clear and unrebutted that the minor had nonaccidental injuries, and I think that the evidence is further unrebutted that [respondent's son], the fourteen-year-old son of the legal guardian, inflicted of [sic] the injuries.
And I would take issue with the statements that this was simply a fight between a four-year-old and a fourteen-year-old, and I would take some issue with the argument that it was an incident [sic].
Because * * * the DCP [sic] worker saw old and new marks on this child's body. So I am not inclined to believe that it was * * * a one-time battle.
* * * [T]he question in my mind is whether or not the legal guardian was aware of [her son's] actions. * * *.
And the reason that I conclude that it is more probable than not that the legal *1092 guardian knew are for the following reasons: First of all, as I have indicated, the DCP [sic] worker indicated that the marks were old and new. And I am relying on the DCP [sic] worker's * * * experience and frankly her demeanor as she described the marks on F.S.' body to the court.
My sense or my inference from her description is that these were marks that took her aback to some extent, and she is an experienced person in the field who observes children in abuse and neglect situations.
* * *
I find [respondent's denial of seeing the marks] to be not credible * * *.
In addition there were marks on F.S.' face. These marks were described as red marks and a big bruise, a dark bruise, long linear lines.
It is inconceivable to me that a guardian of a child who is four years old never has a opportunity to inspect that child's body in helping him or in changing his clothing or in attending to his hygiene.
So I find that statement that she was unaware of the marks and had no idea how they were inflicted to be unbelievable.
I also find that weighted into this determination is [the fact that F.S.] had injuries, bruises, lines all over his body.
And it seems to me that if someone were caring for a four-year-old child and discovered those kinds of marks, that at least some medical attention would have been sought.
* * * [F]ailing to follow through on any kind of medical care, * * * with those sorts of injuries on a four-year-old child leads the court to think that it is more likely than not that the legal guardian knew those injuries were there and how they were inflicted.
I discredited the statement and the line of argument that the legal guardian had a hearing problem.
The DCP [sic] worker * * * never had any indication of a hearing problem until she came to court and spoke with the legal guardian who advised her of that problem some days later. I don't believe that testimony."
After the trial court made its findings of abuse and neglect under the Act, the case proceeded to a dispositional hearing pursuant to section 2-21(2) of the Act (705 ILCS 405/2-21(2) (West 2002)) that same day. The State called Deborah Jackson-Crawford, a social worker employed by DCFS, as a witness. Jackson-Crawford testified that she had been assigned to F.S.' case since February 22, 2002. She also stated that F.S. had completed his counseling sessions, F.S. was now residing with his mother in Florida, and the home with his mother was safe and appropriate. Jackson-Crawford recommended that the case be closed.
At the conclusion of the dispositional hearing, the trial court vacated the order of protection that had been entered in conjunction with the temporary custody hearing and entered a disposition order, finding the biological mother to be fit, willing, and able to care for F.S. The disposition order also contained a finding that respondent was "unable for some reason other than financial circumstances alone to care for, protect, train, or discipline the minor; and minor has returned to his mother." The trial court ordered F.S. to remain in the custody of his mother and the case was closed.
This appeal followed.

ANALYSIS

I. Adjudication Order
Respondent first contends that the trial court's findings of physical abuse pursuant *1093 to section 2-3(2)(i) of the Act, abuse based on a substantial risk of physical injury pursuant to section 2-3(2)(ii) of the Act, and neglect based on an injurious environment pursuant to section 2-3(1)(b) of the Act (705 ILCS 405/2-3(i), 2-3(ii), 2-3(1)(b) (West 2002)) were against the manifest weight of the evidence. Both the State and the public guardian argue that the evidence in the record clearly supports the findings of the trial court. Respondent makes no reply to the State's and public guardian's argument.
Whenever a petition for adjudication of wardship is brought under the Act, the "best interests of the child is the paramount consideration." In re K.G., 288 Ill. App.3d 728, 734-35, 224 Ill.Dec. 534, 682 N.E.2d 95 (1997). In child abuse cases, the State must prove abuse or neglect by a preponderance of the evidence. In re R.M., 307 Ill.App.3d 541, 551, 240 Ill.Dec. 917, 718 N.E.2d 550 (1999). "Preponderance of the evidence is that amount of evidence that leads a trier of fact to find that the fact at issue is more probable than not." K.G., 288 Ill.App.3d at 735, 224 Ill. Dec. 534, 682 N.E.2d 95.
This court will not disturb the trial court's findings that a child has been abused or neglected within the meaning of the Act unless they are against the manifest weight of the evidence. In re M.D.H., 297 Ill.App.3d 181, 190, 231 Ill.Dec. 863, 697 N.E.2d 417 (1998). "A trial court's finding is against the manifest weight of the evidence if review of the record clearly demonstrates that the opposite result would be the proper one." K.G., 288 Ill. App.3d at 735, 224 Ill.Dec. 534, 682 N.E.2d 95. "The trial court has the best opportunity to observe the demeanor and conduct of the parties and witnesses and, therefore, is in the best position to determine the credibility and weight of the witnesses' testimony." In re E.S., 324 Ill.App.3d 661, 667, 258 Ill.Dec. 440, 756 N.E.2d 422 (2001). As a result, "the trial court is afforded broad discretion when determining the existence of abuse[.]" R.M., 307 Ill.App.3d at 551, 240 Ill.Dec. 917, 718 N.E.2d 550. Cases adjudicating abuse and neglect are sui generis and must be decided on the basis of their own particular facts. In re S.S., 313 Ill.App.3d 121, 126, 245 Ill.Dec. 808, 728 N.E.2d 1165 (2000).

A. Physical Abuse
Respondent contends that the trial court's finding that F.S. had been abused based on physical abuse inflicted by respondent's son was against the manifest weight of the evidence because section 2-3(2)(i) of the Act requires a minor's injuries to be inflicted by other than accidental means, yet the State here presented no evidence as to how respondent's son inflicted the alleged physical abuse. According to respondent, the "only possible explanation presented" was that the marks were the result of the children playing. The State argues that the record overwhelmingly supports the trial court's finding that F.S.' injuries were the result of physical abuse and not an accident from playing or wrestling.
Section 2-3 of the Act provides:
"(2) Those who are abused include any minor under 18 years of age whose parent or immediate family member, or any person responsible for the minor's welfare, or any person who is in the same family or household as the minor, or any individual residing in the same home as the minor, or a paramour of the minor's parent:
(i) inflicts, causes to be inflicted, or allows to be inflicted upon such minor physical injury, by other than accidental means, which causes death, disfigurement, impairment of physical or emotional *1094 health, or loss or impairment of any bodily functions." 705 ILCS 405/2-3 (2)(i) (West 2002).
Section 2-3(2)(i) requires only that the physical injury occur by "other than accidental" means; it does not require specific intent to harm or punish the child. In re Marcus H., 297 Ill.App.3d 1089, 1098, 232 Ill.Dec. 120, 697 N.E.2d 862 (1998).
In the case at bar, the evidence clearly supports the trial court's finding that the injuries to F.S. were nonaccidental. Cook testified that F.S. had stated that the looped marks on his body were the product of being whipped by respondent's son. F.S.' statements were corroborated when Cook specifically noted that she had seen loop marks on his back and legs, marks on his face, a dark bruise on his eye, and that there were "old marks" and "fresh marks." The trial court discredited respondent's explanation that the injuries arose from a "one-time battle" because there were both old and fresh marks on F.S.' body. Respondent failed to rebut this evidence.
Moreover, a trial court "cannot disregard expert medical testimony that is not countervailed by other competent medical testimony or medical evidence." In re Ashley K., 212 Ill.App.3d 849, 890, 156 Ill.Dec. 925, 571 N.E.2d 905 (1991). See Marcus, 297 Ill.App.3d at 1096, 232 Ill. Dec. 120, 697 N.E.2d 862; R.M., 307 Ill. App.3d at 551, 240 Ill.Dec. 917, 718 N.E.2d 550. See also In re C.B., 248 Ill.App.3d 168, 179, 188 Ill.Dec. 28, 618 N.E.2d 598 (1993). In the case at bar, Dr. Vateva, an expert witness in child abuse, testified that the loop marks on F.S. indicated that an object with two parallel surfaces, such as a bar or belt, had been used forcefully over F.S.' body, and diagnosed F.S. as being a victim of physical child abuse. Vateva stated that, although it may have been possible, she did not believe the bruises were a product of children playing. Respondent failed to countervail Vateva's testimony with other competent medical testimony or medical evidence. As a result, the trial court could not disregard Vateva's testimony. Accordingly, we agree with the trial court that the evidence presented at the adjudication hearing was "clear and unrebutted that the minor had nonaccidental injuries."
Respondent cites to R.M., a case in which the minor had circular lesions on her hands that the State maintained were cigarette burns, in support of her argument that "the marks and bruises on F.S. do not rise to the level of physical abuse" inflicted on the minor in R.M. R.M., 307 Ill.App.3d at 544, 240 Ill.Dec. 917, 718 N.E.2d 550. In R.M., the trial court entered an order finding the minor physically abused, and, on appeal, the R.M. court held that the trial court's finding of abuse was not against the manifest weight of the evidence. R.M., 307 Ill.App.3d at 551-52, 240 Ill.Dec. 917, 718 N.E.2d 550. We find respondent's argument here unavailing because, as the State argues, cases involving an adjudication of wardship are sui generis, and "each case must ultimately be decided on the basis of its own particular facts." In re M.Z., 294 Ill.App.3d 581, 593, 229 Ill.Dec. 99, 691 N.E.2d 35 (1998).
Respondent also maintains that the injuries suffered by F.S. did not rise to the level of physical abuse because "[t]he minor was not in any distress," F.S.' injuries "required no medication or medical care," and F.S. "was later observed in Florida to be in good health." The State argues that "the record overwhelmingly shows * * * that [F.S.'] injuries were the result of physical abuse."
Pursuant to the Act, a minor is physically abused if he suffers an injury which causes "death, disfigurement, impairmentof physical or emotional health, or loss or impairment of any bodily function." 705 *1095 ILCS 405/2-3(2)(i) (West 2002). We note that respondent cites no authority, nor has our research revealed any, in support of her argument that where a minor requires no medical treatment for his injuries, the minor's injuries do not constitute physical abuse. Moreover, there simply is no requirement in section 2-3(2)(i) that a minor be hospitalized for injuries sustained to establish physical abuse. See In re Gomez, 53 Ill.App.3d 353, 359, 11 Ill.Dec. 224, 368 N.E.2d 775 (1977) (stating that the fact that a child was not hospitalized for bruises she sustained was "insignificant" because "there exists no requirement that such hospitalization is a prerequisite for the conclusion that a child is suffering neglect").
In any event, we reject respondent's contention that the marks and bruises on F.S.' body did not amount to physical abuse. Dr. Vateva testified that the loop marks and bruises were a product of being whipped, with significant force, with something that had two parallel surfaces and diagnosed F.S. as suffering from physical child abuse. Respondent offered no evidence to dispute Vateva's testimony. As stated above, a trial court "cannot disregard expert medical testimony that is not countervailed by other competent medical testimony or medical evidence." Ashley K., 212 Ill.App.3d at 890, 156 Ill.Dec. 925, 571 N.E.2d 905. As a result, the trial court could not disregard Vateva's testimony that F.S. had been physically abused. We therefore find that the trial court's finding of physical abuse, pursuant to section 2-3(2)(i) of the Act (705 ILCS 405/2-3(2)(i) (West 2002)), was not against the manifest weight of the evidence.

B. Abuse Based on a Substantial Risk of Injury
Respondent next contends that the trial court's finding that F.S. was abused based on a substantial risk of physical injury was against the manifest weight of the evidence. According to respondent,
"no evidence was presented by the State as to how the alleged injuries to F.S. occurred. Further, no injury had ever occurred prior to this occasion. In addition, it was never disputed that these injuries resulted from the actions of [respondent's fourteen-year-old son]. Last, it was also undisputed that at the time of the alleged incident the guardian was not present."
The State argues that the totality of the evidence in the present case supported the trial court's finding that F.S. was abused based on a substantial risk of injury.
While respondent's reasoning as to why these findings were against the manifest weight of the evidence is unclear, we note the following. First, with respect to respondent's initial statement that the State failed to prove how F.S.' injuries occurred, as discussed above, the undisputed evidence clearly supported the trial court's finding that the injuries were nonaccidental. Second, respondent's statement that no injury had ever occurred prior to this occasion is contrary to the undisputed evidence adduced at the adjudication hearing; Cook testified that she observed old and fresh marks on F.S.' body, which indicated, as the trial court noted, that the injuries had occurred on more than one occasion. Third, notwithstanding the evidence adduced at trial which showed that, on at least one occasion, respondent was in the home with F.S. while he was being beaten, section 2-3(2)(ii) of the Act, set forth below, simply does not contain any requirement that the guardian of a minor be present while the abuse is taking place. Specifically, section 2-3 of the Act provides:
"(2) Those who are abused include any minor under 18 years of age whose *1096 parent or immediate family member, or any person responsible for the minor's welfare, or any person who is in the same family or household as the minor, or any individual residing in the same home as the minor, or a paramour of the minor's parent:
* * *
(ii) creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement impairment of emotional health or loss or impairment of any bodily function." (Emphasis added.) 705 ILCS 405/2-3(2)(ii) (West 2002).
As detailed above, the record contains sufficient evidence that F.S. was beaten by respondent's 14-year-old son, which respondent failed to rebut. Thus, respondent's son, a person who was in the same household as F.S., created a substantial risk of physical injury to F.S. "by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function." 705 ILCS 405/2-3(2)(ii) (West 2002). The State clearly proved by a preponderance of the evidence that F.S. was abused based on a substantial risk of injury and, accordingly, we find that the trial court's finding, pursuant to section 2-3(2)(ii) of the Act (705 ILCS 405/2-3(2)(ii) (West 2002)), was not against the manifest weight of the evidence.

C. Neglect Based on an Injurious Environment
Respondent argues that the trial court's finding that F.S. was neglected based on an injurious environment was against the manifest weight of evidence because "there was no explanation given as to how the injury occurred," there was only one, isolated incident that caused injury to F.S., and F.S. received no permanent injuries that required medical attention. The State argues, once again, that ample evidence was presented which supports the trial court's finding.
We again note that, with the exception of respondent's argument that the trial court's finding of neglect based on an injurious environment was against the manifest weight of the evidence, we have previously discussed above each of respondent's other arguments on this issue, finding that there was sufficient evidence to support the court's determination that F.S.' injuries were nonaccidental; the evidence adduced at trial is contrary to respondent's statement that the injuries occurred from one, isolated incident; and the fact that a minor is not hospitalized after marks and bruises are found on his or her body does not preclude a finding of physical abuse or neglect.
Section 2-3(1)(b) of the Act states that those who are neglected include "any minor under 18 years of age whose environment is injurious to his or her welfare." 705 ILCS 405/2-3(1)(b) (West 2002). In In re S.D., 220 Ill.App.3d 498, 163 Ill.Dec. 207, 581 N.E.2d 158 (1991), this court stated:
"`Neglect' is generally viewed as a failure to exercise the regard that circumstances justly demand and encompass willful as well as unintentional disregard of parental duties. [Citations.] An `injurious environment' is, however, an amorphous concept which cannot be defined with particularity, therefore, each case should be reviewed considering the specific circumstances of that case. [Citations.] The determination of neglect lies within the province of the trial court [citation], and its determination will not be disturbed by a reviewing court unless it is contrary to the manifest weight of the evidence." S.D., 220 *1097 Ill.App.3d at 502, 163 Ill.Dec. 207, 581 N.E.2d 158.
See In re J.P., 331 Ill.App.3d 220, 234-35, 264 Ill.Dec. 464, 770 N.E.2d 1160 (2002); M.Z., 294 Ill.App.3d at 593, 229 Ill.Dec. 99, 691 N.E.2d 35; K.G., 288 Ill. App.3d at 735, 224 Ill.Dec. 534, 682 N.E.2d 95.
In the instant case, the trial court found that respondent's explanations with respect to her ignorance regarding F.S.' injuries were "inconceivable." However, even assuming that respondent's behavior toward F.S. was not wilful, there was sufficient evidence to find that respondent unintentionally disregarded her parental duties. Respondent claimed that she had not noticed the bruises and marks on F.S. and that she never bathed the four-yearold or helped him put on his clothes. F.S. claimed that respondent was in the next room during one of his beatings. These factors all support a finding that, at the very least, respondent unintentionally disregarded her parental duties.
As discussed extensively above, the trial court found F.S.' injuries to be nonaccidental and to have been inflicted on more than one occasion. The testimony concerning F.S.' physical condition and injuries clearly supports the trial court's finding that F.S. was neglected based on an environment that was injurious to his welfare. See Gomez, 53 Ill.App.3d at 359, 11 Ill.Dec. 224, 368 N.E.2d 775 (finding the evidence, which established that on a number of occasions the minor had sustained serious marks and bruises on her body, clearly supported the conclusion that the minor was neglected based on an injurious environment). Accordingly, we conclude that the trial court's finding of neglect based on an injurious environment, pursuant to section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2002)), was not against the manifest weight of the evidence.

II. Disposition Order
Respondent next contends that the trial court's finding that she was unable for some reason other than financial circumstances alone to care for, protect, train or discipline F.S. was against the manifest weight of the evidence. The State and the public guardian argue that this court lacks jurisdiction to review respondent's arguments regarding the disposition order because respondent's notice of appeal stated only that respondent was appealing from the adjudication order. Alternatively, the State and public guardian argue that respondent waived any challenges to the trial court's finding because respondent's counsel "specifically requested" that the trial court find respondent "unable" due to the fact that F.S. had been returned to his mother. The State and public guardian also maintain that, if we reach the merits of respondent's argument, the trial court's finding was not against the manifest weight of the evidence. Respondent makes no argument in response to the State's and public guardian's arguments, which could have been appropriately made in her reply brief if she had filed one.
We first address the issue of jurisdiction. The purpose of a notice of appeal is to inform the prevailing party that the unsuccessful party has requested review of the judgment complained of and is seeking relief from it. McGath v. Price, 342 Ill.App.3d 19, 30, 276 Ill.Dec. 42, 793 N.E.2d 801 (2003). As such, Supreme Court Rule 303(b) (155 Ill.2d R. 303) states that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Generally, notices of appeal are to be construed liberally. Daniels v. Anderson, 162 Ill.2d 47, 62, 204 Ill.Dec. 666, 642 N.E.2d 128 (1994); Waste *1098 Management, Inc. v. International Surplus Lines Insurance Co., 144 Ill.2d 178, 188-89, 161 Ill.Dec. 774, 579 N.E.2d 322 (1991); Revolution Portfolio, LLC v. Beale, 332 Ill.App.3d 595, 599, 266 Ill.Dec. 236, 774 N.E.2d 14 (2002). As a result of this liberal construction, the failure to specify a particular order in a notice of appeal does not preclude our review of that order "so long as the order that is specified directly relates back to the judgment or order from which review is sought." (Emphasis added.) Perry v. Minor, 319 Ill.App.3d 703, 708-09, 253 Ill. Dec. 339, 745 N.E.2d 113 (2001); Taylor v. Peoples Gas Light & Coke Co., 275 Ill. App.3d 655, 659, 211 Ill.Dec. 942, 656 N.E.2d 134 (1995). See Burtell v. First Charter Service Corp., 76 Ill.2d 427, 434, 31 Ill.Dec. 178, 394 N.E.2d 380 (1979) (stating that the notice of appeal may be construed as including an unspecified part of the order or judgment if it appears from the notice of appeal itself and the subsequent proceedings that the appellant and appellee understood that appeal was intended to have been taken from an unspecified judgment, and noting that such a construction would be appropriate in a situation in which the specified order "directly relates back" to the order sought to be reviewed). See also Dalen v. Ozite Corp., 230 Ill.App.3d 18, 23, 171 Ill.Dec. 845, 594 N.E.2d 1365 (1992). In other words, it is appropriate to retain our jurisdiction to review the unspecified judgment "if it is a `step in the procedural progression leading' to the judgment specified in the notice of appeal." Burtell, 76 Ill.2d at 434-35, 31 Ill.Dec. 178, 394 N.E.2d 380. See People v. Jones, 207 Ill.2d 122, 138, 278 Ill.Dec. 45, 797 N.E.2d 640 (2003); McGath, 342 Ill.App.3d at 33, 276 Ill.Dec. 42, 793 N.E.2d 801; Perry, 319 Ill.App.3d at 709, 253 Ill.Dec. 339, 745 N.E.2d 113; LaSalle National Bank v. City Suites, Inc., 325 Ill.App.3d 780, 785, 259 Ill.Dec. 259, 758 N.E.2d 382 (2001); Taylor, 275 Ill.App.3d at 659, 211 Ill.Dec. 942, 656 N.E.2d 134; Dalen, 230 Ill.App.3d at 23, 171 Ill.Dec. 845, 594 N.E.2d 1365.
In the case at bar, the adjudication order cannot directly relate back to the disposition order because the adjudication order preceded the disposition order. By its very nature, the disposition order follows not only the adjudication order, but also a subsequent dispositional hearing, and cannot be said to be "a `step in the procedural progression leading' to the [adjudication order that was] specified in the notice of appeal." Burtell, 76 Ill.2d at 434-35, 31 Ill.Dec. 178, 394 N.E.2d 380. See LaSalle National Bank, 325 Ill.App.3d at 785, 259 Ill.Dec. 259, 758 N.E.2d 382 (where the notice of appeal specified that an appeal was being taken from the orders entered on August 11, 1998, and January 14, 1999, the appellate court lacked jurisdiction to review the trial court's February 3, 1999, order because the February 3 order was not a "step in the procedural progression" leading to the ultimate judgment); McGath, 342 Ill.App.3d at 33, 276 Ill.Dec. 42, 793 N.E.2d 801 (where the notice of appeal specified that an appeal was being taken from the trial court's order of March 6, 2001, the reviewing court lacked jurisdiction over the trial court's August 8, 2001, order which came after the March 6 order, was not specified in the notice of appeal, and could not be deemed to have been a step in the procedural progression leading to the March 6 order). Accordingly, we find that we lack jurisdiction to consider respondent's alleged appeal from the trial court's disposition order.
We briefly note that, during oral argument before this court, respondent's counsel maintained that, based on In re J.P., 331 Ill.App.3d 220, 264 Ill.Dec. *1099 464, 770 N.E.2d 1160 (2002), the disposition order could be "fairly inferred" from the notice of appeal. Pursuant to Supreme Court Rule 341(e)(7) (188 Ill.2d R. 341(e)(7)), points raised for the first time on appeal at oral argument are deemed waived. See Sears, Roebuck & Co. v. Acceptance Insurance Co., 342 Ill.App.3d 167, 172, 275 Ill.Dec. 965, 793 N.E.2d 736 (2003). Accordingly, respondent's argument is waived. Notwithstanding respondent's waiver, we briefly note that J.P. in fact supports our decision here that we lack jurisdiction to consider respondent's arguments concerning the trial court's disposition order. In J.P., the respondent's notice of appeal specifically stated that she was appealing from a disposition order entered on November 30, 1999. J.P., 331 Ill.App.3d at 234, 264 Ill.Dec. 464, 770 N.E.2d 1160. On appeal, the respondent also argued an issue concerning the propriety of the trial court's adjudication order entered on June 8, 1999. J.P., 331 Ill.App.3d at 233, 264 Ill.Dec. 464, 770 N.E.2d 1160. In response to this argument, the J.P. court stated:
"When an appeal is taken from a specified judgment, the appellate court acquires no jurisdiction to review other judgments or parts of judgments not specified or fairly inferred from the notice. [Citation.] Because [the respondent's] notice of appeal does not specify appeal is taken from the court's June 8, 1999 adjudication order, we are without jurisdiction to consider her claims with respect to this order." J.P., 331 Ill. App.3d at 234, 264 Ill.Dec. 464, 770 N.E.2d 1160.
In essence, the J.P. court found that, based on the notice of appeal, which specified that appeal was being taken from the disposition order, it could not fairly infer the adjudication order from the notice of appeal. J.P., 331 Ill.App.3d at 234, 264 Ill.Dec. 464, 770 N.E.2d 1160.
In the instant case, the notice of appeal states, in relevant part:
"NOTICE OF APPEAL
[Respondent] appeals to the Appellate Court of Illinois for the First District from the following order(s) entered in this matter * * *:
* * *
4. Nature of the order appealed from: Adjudication Order.
5. Date of judgment being appealed: July 10, 2002.
By this appeal, appellant will ask the Appellate court to reverse the order of July 10, 2002, and remand this cause back to the trial court for the appropriate proceeding, or for such other and further relief as the Appellate court may deem proper."
It is clear that the notice of appeal specified that respondent was appealing from the "Adjudication Order" and, therefore, we lack jurisdiction to review the disposition order unless it can be "fairly inferred" from the notice of appeal.
Even though the adjudication order and disposition order were both entered on July 10, 2002, they are two, distinct orders, and, as a result, an appeal from one, specific order cannot "infer" the other. The adjudication and disposition orders were entered after, and as a result of, the facts that were developed at the separate adjudication and dispositional hearings, respectively. The adjudication order contained findings of physical abuse, abuse based on a substantial risk of injury, and neglect based on an injurious environment pursuant to the Act. The disposition order contained findings that the biological mother was fit, able, and willing to care for, protect, train, and discipline F.S. and that *1100 respondent was unable for some reason other than financial circumstances alone to care for, protect, train, or discipline F.S. because he had been returned to his biological mother. Because the orders were the product of separate hearings and contained different and distinct findings, it cannot be inferred from respondent's specified appeal from the adjudication order in her notice of appeal that respondent was also appealing from the disposition order. Accordingly, respondent's "inference" argument would fail.
Moreover, we further note that if appellate jurisdiction is to be conferred in a situation in which the notice of appeal fails to clearly specify the judgment appealed from, then the notice must "fairly and accurately" advise the successful party of the nature of the appeal. In re Marriage ofBetts, 159 Ill.App.3d 327, 330, 110 Ill.Dec. 555, 511 N.E.2d 732 (1987). Here, respondent's notice of appeal, specifying that an appeal was being taken from the trial court's adjudication order, which contained findings of abuse and neglect of F.S., did not "fairly and accurately" advise the State that respondent also intended to challenge the court's finding that she was unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline F.S.
In summary, we find that we lack jurisdiction to consider respondent's arguments concerning the trial court's disposition order because the disposition order was not a "step in the procedural progression leading" to the trial court's adjudication order, it could not be "fairly inferred" from the notice of appeal, which specified that respondent was appealing from the adjudication order, that respondent was also appealing from the disposition order, and respondent's notice of appeal did not "fairly and accurately" advise the State of an appeal being sought from the disposition order.

CONCLUSION
For the reasons stated, we affirm the adjudication order of the circuit court.
Affirmed.
WOLFSON, P.J., and CAHILL, J., concur.